STATE *ex rel.* J. W. LINKOUS *v.* JOHN R. MORRIS.

(*Knoxville*. September Term, 1916.)

1 **STATUTES.** Time of taking effect. Repealing act.

Pub. Acts 1915, chapter 3, expressly repealing Acts 1897, chapter 125, relative to State penitentiaries, but by its terms not to be in effect until March 19, 1915, became effective as a distinct act of the legislature on March 19, 1915, from that date forward suspending the act of 1897. (*Post, pp.* 161-164.)

Acts cited and construed: Acts 1897, ch. 125; Acts 1915, ch. 3.

Case cited and approved: Van Dyke v. Thompson, 189 S. W., 62.

2. **PRISONS.** Officers. Repeal without saving clause. Effect.

When an act of the legislature is repealed without a saving clause, it is considered, except as to transactions, passed and closed, as though it had never existed, so that a prison chaplain was not entitled to his office after the repeal of the act pursuant to which he had been appointed and under which he held office. (*Post, pp.* 161-164.)

3. **CONSTITUTIONAL LAW.** Prisons. Legislating out of office. Statutes.

Pub. Acts 1915, chapters 3 and 20, repealing Acts 1897, chapter 125, relative to the State penitentiary, and placing the penal, reformatory, and charitable institutions of the State under the management of a state board of constrol is not violative of Constitution article 1, section 8, providing that no man shall be deprived of his life, liberty, or property but by the judgment of his peers or the law of the land, or Constitution United States Amendment 14, section 1, prohibiting abridgement of privileges of any citizen of the United States, etc., as legislating out of office the chaplain for a State penitentiary appointed by virtue of Acts 1897, chapter 125, sections 5 and 6, since the Legislature, in the public interest, may abolish an office. (*Post, pp.* 161-164.)

FROM MORGAN.

Appeal from the Criminal and Law Court of Morgan County.—Xen Hicks, Judge.

J. W. STONE, for appellant.

J. M. DAVIS, for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This is an action in the nature of a *quo warranto* proceeding. Linkous was appointed and commissioned chaplain for the Brushy Mountain branch of the State Penitentiary, situated at Petros, in Morgan county, Tenn., by virtue of sections 5 and 6 of chapter 125 of the Acts of 1897. The date of his appointment was January 9, 1915. The act of 1897 was expressly repealed by an act passed January 29, 1915, and approved the same day, but by its terms it was not to be in effect until March 19, 1915. See chapter 3, p. 7, Public Acts 1915. On the same day the repealing act was passed there was also passed chapter 20, Acts of 1915. See pages 44-63, Public Acts of 1915. This act was approved March 12, 1915, and it also was made to take effect on March 19, 1915. It is thus seen that the repealing

act became a law when it was approved on Januray 29, 1915, and chapter 20 became a law when it was approved on March 12, 1915. The duties of the chaplain, under section 5, chapter 125, Acts of 1897, were thus stated: ''To instruct the convicts, . . . '' and '' to see that there are religious services at the prison chapel each Sunday morning and afternoon.'' And under section 6 of that act his term of office was to begin at the expiration of the term of ''the present official,'' and to continue for a term of two years, The duties of the chaplain, and his term of office, as fixed by chapter 20, Acts of 1915, appear in sections 42 and 44 of that act, which we quote, as follows:

''That it shall be the duty of the board and they are hereby authorized and empowered to appoint for the Tennessee State Penitentiary and the Brushy Mountain Penitentiary a physician and a chaplain for each of said institutions and a matron for the Tennessee State Penitentiary, all of these appointments to be made by and with the advice of the Governor.''

''That the chaplain for the Tennessee State Penitentiary and the Brushy Mountain Penitentiary shall be appointed for terms of four years and shall each receive salaries of twelve hundred and fifty dollars ($1,250.00) per annum, payable monthly. It shall be the duty of the said chaplain to see that religious services are conducted in the prison chapels on Sundays; to visit the sick and to render such

service in connection with the prison library and the prison schools and to do and perform such other duties for the moral improvements of the inmates as may be required by the board."

By chapter 125, Acts of 1897, the salary of the chaplain of the main prison was fixed at $500 per annum, and the salary of the chaplain at any branch prison was fixed at a sum not to exceed $250 per annum. Under chapter 20, Acts of 1915, the salary of the chaplain was fixed as set out in said section 44, copied supra.

It is averred in the bill that after chapter 20, Acts of 1915, by its terms was in effect, the defendant, John R. Morris, was appointed chaplain, pursuant to section 42 of that act; this appointment was made on May 28, 1915; that thereafter access to the chapel, and to the interior of the prison, was denied to Linkous, and Morris discharged the duties of chaplain. Linkous insists that chapters 3 and 20 of the Acts of 1915 cannot be effective to deprive him of the right to discharge the duties and receive the compensation of chaplain during the balance of his term of two years from the date of his appointment, because to give the legislation such effect would contravene article 1, section 8, of the State Constitution, and section 1 of the Fourteenth Amendment of the Constitution of the United States. The petition seeks a decree adjudging that the appointment of Morris was void, that Morris be ousted from the office, and that the relator, Linkous, be inducted, and

for general relief, etc. The original petition was filed July 21, 1915. It was met by a demurrer which the court sustained, and it also dismissed the petition, with costs, from which judgment Linkous prayed and was granted and perfected his appeal to this court.

Appellant relies on the doctrine of *Malone* v. *Williams*, 118 Tenn. (10 Cates), 390—480, 103 S. W., 798, 121 Am. St. Rep., 1002. In that case, at page 461 of 118 Tenn., page 817 of 103 S. W. (121 Am. St. Rep., 1002) it was said:

"An office is a species of property, and the legislature cannot constitutionally legislate an officer out of that property while leaving the office with its duties unimpaired. This would be taking the property of the citizen without due process of law, in violation of article 1, section 8, of the Constitution. The legislature can, indeed, abolish any office, if there be no constitutional restriction in the way, and thereby abrogate the duties attached, and as an incident thereto the rights of the officer cease, since there is nothing to which they can attach. But, as already stated, it cannot leave the office standing and abolish the officer. His property interests consists in his right to discharge the duties of the office and to take its emoluments so long as the office exists and the term continues. Of course, where under the terms of the grant the officer is removable at pleasure, a different result follows."

We do not think the principle embodied in the quotation determines the merits of the present con-

troversy. We think the repeating act, as a distinct act of the legislative department, became effective on the date fixed by its terms, March 19, 1915. From that time forward the act under which appellant now claims was indefinitely suspended. "The general rule is that, when an act of the Legislature is repealed without a saving clause, it is considered, except as to transactions passed and closed, as though it had never existed." See Lewis Sutherland Statutes Constitution, volume 1, section 282. There is no saving clause in the repealing act, and the right which relator here asserts is not that he is entitled to compensation earned prior to and unpaid at the date of the repeal of the act under which he claims. On the contrary, he asserts rights which, if granted to him, would nullify the repealing act and be enjoyed in spite and in face of its terms. So it is clear that the repealing act in this case falls under the general rule, and the law repealed by it must therefore be regarded as never having had any existence, and wholly inoperative to confer on appellant the rights he asserts, unless there be some constitutional objection which renders the repealing act void. Appellant insists that the two acts, when construed together, indicate a purpose to legislate him out of office, while leaving the office with its duties unimpaired. But the answer to this is that, if the legislature considered that chapter 125 of the Acts of 1897 should, in the interest of the public, be repealed because a better scheme for the management of the

state penitentiary could be enacted, then it was not only within the competency, but the duty, of that body to repeal the act of 1897, and substitute therefor appropriate legislation; and this although an incident of the repeal might be the shortening of the relator's existing term of office. Under our Constitution laws for the benefit of any particular individual are condemned (article 11, section 8), and by analogy, when it is to the interest or benefit of a particular individual that a certain statute remain in force, but the interest of the public requires that it be repealed, the legislature is not bound to stay its hand. There is nothing in the repealing act to indicate that the purpose behind it was to legislate appellant out of office. No such indication appears in chapter 20, Acts of 1915, and, whether we look at the two acts separately or together, we can see no such purpose. We cannot hold, on the mere averment in appellant's petition and brief, that behind each of these important acts there lurked the purpose to despoil appellant of his office. The source from which courts draw their conclusions as to the purpose of an act is the title and the body thereof. Tested in this way, the legislation appears to disclose an exercise by the legislature of its judgment in the interest of the state, in the creation of a new and broader system, distinct in essential particulars from the former one. The effort was not to recreate or revive the same system with appellant eliminated. The conclusion reached was that the penal, reforma-

tory, and charitable institutions controlled and operated by the state should be under the management of a state board of control, such as is created by chapter 20 of the Acts of 1915; and, having reached that conclusion, the legislature set about the accomplishment of the reform. Chapter 125 of 1897 was an obstacle. It stood in the way of the contemplated reform, and for that reason it was repealed. It was appellant's misfortune that the act on which his office hung stood in the way of a scheme for better government of the state's institutions. That one of our cases which we think announces principles and cites authorities determinative of the present controversy is *T. N. Van Dyke et al.* v. *T. C. Thompson et al.*, 189 S. W., 62, from the Hamilton equity docket, in which an opinion was filed on October 3, 1911, which by inadvertence was not marked for publication, but is now so marked. It is unnecessary to repeat herein the reasoning and authority which appear in that opinion, and support the view which we take of the legislation involved in the present case.

There is no merit in the assignments of error, and the judgment is affirmed.