W. W. HOUSE *et al. v.* CREVELING. LOUTHAN *et al v.* SENTER.*
· LYNN *v.* POPE.

(*Nashville.* December Term, 1922.)

1. **STATUTES.** Bill entitled ''An act to reorganize the administration of the State'' held to express a subject of legslation in its caption.

House Bill No. 183, approved January 31, 1923, entitled "An act to reorganize the administration of the State," which means the executive part of the government, expresses a subject of legislation in its caption. (*Post, p.* 595.)

Constitution cited and construed: Art. 2, sec. 17.

2. **STATUTES.** Subject of bill intended as shown by caption to reorganize the State executive department held not too broad as regulating matters of a judicial and legislative nature.

The subject of House Bill No. 183, approved January 31. 1923, intended, as shown by its caption, to reorganize the executive department, is not too broad, as regulating matters of a judicial nature, because in section 39 it makes the registrar of professions and trades secretary and treasurer of the board of law examiners to receive application for licenses, and to collect fees fixed by law in conection with the work of the board, as his other duties must be performed with the consent of the board, and no judicial function is conferred on him, conceding that the board is a judicial body, nor because in sections 12, 16, and 21 it gives to an executive department and a commissioner authority over the expenditures of the supreme court, as this does not infringe on any judicial prerogative, nor because it confers quasi-judicial powers on the state equalization board and the fire prevention commissioner, as they are executive, and not judicial, officers, as to which a statute dealing with the executive department may properly legislate and confer such powers on them without making them judicial officers, and neither is the subject of the bill too broad as regulating matters of a legislative nature because it confers on

---

*The question of conclusiveness of an enrolled bill is discussed in note 40 L. R. A. (N. S.), 1.

House v. Creveling.

commissioners power to make rules which are commonly given to them and have the force of statutes, and whose formulation is the exercise of a legislative power, as their *status* as executive officers is not thereby changed.    (*Post, p.* 595.)

3. **OFFICERS.** Quasi-judicial powers do not make officers judicial.

*Quasi*-judicial powers conferred on officers do not make such officers judicial.    (*Post, pp.* 595-597.)

Cases cited and approved:    Richardson v. Young, 122 Tenn., 471; Woods v. State, 130 Tenn., 100.

4. **STATUTES.** Not beyond scope of statute dealing with executive officers to confer quasi-judicial powers.

It is not inappropriate nor beyond the scope of a statute dealing with executive officers to confer on them *quasi*-judicial powers. (*Post, p.* 597.)

5. **STATUTES.** Bill to reorganize state administration affecting about sixty commissions, boards, departments, and officials not omnibus legislation.

House Bill 183, approved January 31, 1923, to reorganize the administration of the State creating and establishing certain departments and officers, and prescribing their powers and duties, fixing certain salaries, abolishing certain offices, boards, commissions, and other agencies, and affecting about sixty commissions, boards, departments, and officers, *held* not *omnibus* legislation, its various provisions being congruous and germane, and unity of purpose being preserved.    (*Post, p.* 597.)

Cases cited and approved:    Cannon v. Mathes, 55 Tenn., 504; State v. Cumberland Club, 136 Tenn., 84; Railroad v. Transportation Co., 128 Tenn., 277; State v. McCann, 72 Tenn., 17; Carroll v. Alsup, 107 Tenn., 257.

Acts cited and construed:    Acts 1875, ch. 142.

6. **STATUTES.** Germaneness of Provisions of act determined by court's knowledge of affairs.

The question whether the various provisions of an act are congruous

House v. Creveling.

and germane is largely one of fact to be determined by the court's knowledge of affairs. (*Post, pp.* 597-599.)

Cases cited and approved: Frazier v. Railroad, 88 Tenn., 138; Bowman v. Cockrill, 6 Kan., 311; Acklen v. Thompson, 122 Tenn., 43.

7. **STATUTES.** Bill to reorganize state administration held to recite in its caption and otherwise title or substance of laws in part repealed.

House Bill No. 183, approved January 31, 1923, entitled "An act to reorganize the administration of the State to secure better service and through co-ordination and consolidation to promote economy and efficiency in the work of the government creating and establishing certain departments and offices and prescribing their powers and duties, fixing certain salaries, abolishing certain offices, boards," etc., and repealing conflicting acts and parts of acts, and which in section 59 thereof abolished numerous officers, commissions, boards, etc., *held* to be expressly repealing and to recite in its caption and otherwise the title or substance of the laws in part repealed. (*Post, pp.* 599, 600.)

Cases cited and approved: Shelton v. State, 96 Tenn., 521; Turner v. State, 111 Tenn., 593; Stinnett v. State, 142 Tenn., 94.

8. **STATUTES.** One descriptive word or phrase may be employed to convey purport of earlier statutes relating to one subject repealed or amended.

Where an act proposes to repeal or amend several laws relating to one subject, it is not necessary for it to recite the title or substance of each previous law separately, but one descriptive word or phrase may be employed to convey the purport of all the earlier statutes. (*Post, pp.* 600-602.)

Cases cited and approved: Heiskell v. City of Knoxville, 136 Tenn., 376; Van Dyke v. Thompson, 136 Tenn., 136; Minter v. State, 145 Tenn., 678.

Case cited and distinguished: Greenwood v. Rickman, 145 Tenn., 361.

9. **STATUTES.** Both caption and body of act considered to determine whether it identifies repealed or amended laws.

Both the body and caption of an act may be looked to in determining whether it sufficiently identifies former laws sought to be repealed or amended. . (*Post*, *p*. 602.)

10. **STATUTES.** Abolishment of office created by law repeals so much of law as creates it.

To abolish an office created by law is a method of repealing so much of the law as creates the office. (*Post*, *pp*. 602.)

11. **STATUTES.** Presumption in favor of act when signed, fact noted on journals, and approved by Governor.

Where an act has been signed by the respective speakers of both houses in open session, and that fact noted on the journal and has been approved by the Governor, as required by the Constitution, every reasonable presumption is in favor of the regularity of its passage, and the act will be sustained unless the journals affirmatively show the absence of some constitutional requirements, and the court will not presume from the mere silence of the journal that one of the legislative bodies has disregarded the Constitution. (*Post*, *pp*. 602, 603.)

Acts cited and construed: Acts 1923, secs. 1, 2, art. 2.

Cases cited and approved: Jackson v. Mfg. Co., 124 Tenn., 421; Home Teleg. Co. v. Nashville, 118 Tenn., 1; State v. Algood, 87 Tenn., 163; Williams v. State, 74 Tenn., 553; State v. McConnell, 71 Tenn., 341; Webb v. Carter, 129 Tenn., 182.

12. **CONSTITUTIONAL LAW.** States. Bill to reorganize administration of state held not unconstitutional as depriving officers of property rights.

House Bill No. 183, approved January 31, 1923, reorganizing the administration of the state, is not unconstitutional as depriving certain officers of their property rights in violation of Constitution, article 1, section 8, and Constitution, U. S. Amendment 14, because it legislated them out of their offices when necessary to put in effect the new scheme of government, the change made being real

House v. Creveling.

and not colorable for the purpose of putting one set of men out of office and another set in. (*Post, pp.* 603, 604.)

Acts cited and construed: Acts 1909, ch. 298; Acts 1911, ch. 10; Acts 1915, ch. 3; Acts. 1897, ch. 125.

Case cited and approved: Malone v. Williams, 118 Tenn., 390.

Cases cited and distinguished: Van Dyke v. Thompson, 136 Tenn., 136; State ex rel. Linkous v. Morris, 136 Tenn., 157.

13. **CONSTITUTIONAL LAW.** Municipal corporations. States. Legislature may adopt new system of government creating new officers and abolishing old officers.

The legislature may adopt a new system of government for a municipal corporation or for such institutions and agencies of the State as are not properly protected by the Constitution, and may abolish the old plan, and the officers created for the administration of the old plan in whole or in part, and the rights of officers must give way to what the Legislature conceives to be the public interest, without violation of Constitution, article 1, section 8, or of Constitution, U. S. Amendment 14, assuming that such change is real, and not colorable, for the purpose of putting one set of men out of office and another set in office. (*Post, pp.* 604-607.)

Acts cited and construed: Acts 1919, ch. 39.

14. **CONSTITUTIONAL LAW.** Wisdom of statute not a matter for determination by courts.

The wisdom of a statute is not a matter for determination by the courts. (*Post, pp.* 607-611.)

15. **STATES.** Bill for reorganizing State administration held not to offend Constitution because of centralization of powers.

House Bill No. 183, approved January 31, 1923, reorganizing the administration of the State, deals alone with duties and functions essentially executive, and the centralization of powers thereby which might have been conferred on the Governor individually does not offend the Constitution. (*Post, p.* 611.)

FROM DAVIDSON.

147 Tenn.—38

Appeal from the Chancery Court of Davidson County.—
HON. JOHN R. AUST, Chancellor.

JOE V. WILLIAMS, NELSON FISHER and J. O. PHILLIPS, for
appellants.

CHAS. C. TRABUE, H. N. LEECH and FRANK M. THOMP-
SON, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

The above-styled cases were consolidated by consent of
the parties, and were heard together in the lower court
and in this court.

The three suits were brought by state officials to en-
join interference with the possession of the offices they
held. It was alleged tha- the defenc.ants were claiming
to be entitled to exercise the functions of the offices held
by complainants by reason of the provisions of an act of
the legislature known as House Bill No. 183, approved by
the Governor January 31, 1923. It was averred that said
act was unconstitutional and void. A temporary restrain-
ing order was issued by the chancellor, and answers were
filed by the defendants. The chancellor sustained the val-
idity of the act and dismissed the three bills, from which
decree the complainants have appealed to this court.

The discussion here has been confined to the question
of the constitutionality of the act.

The first assault made upon the act is that it violates
section 17 of article 2 of the Constitution, in that: (1) It
contains more than one subject; (2) that the body of the
act is broader than the caption; and (3) that it undertakes

to repeal former laws without reciting in its caption or otherwise the title or substance of such laws.

It is first contended that the caption of the act expresses no subject of legislation whatever. We think this is a mistake.

The title of the act is as follows:

"An act to reorganize the administration of the State in order to secure better service and through co-ordination and consolidation to promote economy and efficiency in the work of the government, creating and establishing certain departments and offices and prescribing their powers and duties, fixing certain salaries, abolishing certain offices, boards, commissions and other agencies, and repealing conflicting acts and parts of acts."

The subject of the act seems rather plain from an inspection of the title. It proposes "to reorganize the administration of the State" in the manner indicated.

As here used, the word "administration" means the executive part of government. This is the primary meaning of the word as defined by Noah Webster. It is so used by such authorities as Lord Macaulay and Dr. Johnson. It is so used by all counsel in this case who refer to this act sponsored by the chief executive as the "administration bill."

"The administration of government means the practical management and direction of the executive department. . . ." Black's Law Dictionary.

The word is sometimes used to express a broader meaning, but commonly indicates the executive machinery of government.

It is argued, if this be the subject of the act, the body of it is too broad, because it is said to regulate matters of a

judicial and legislative nature. The argument is that the act contains provisions with reference to the state board of law examiners, which is said to be a judicial body; that it confers judicial powers on the state equalization board created by the act, and that it undertakes to abolish the office of the fire prevention commissioner, who is said to be quasi a judicial functionary; that it undertakes to regulate the expenses of the supreme court; and that it gives legislative power to certain commissioners.

The board of law examiners is only affected in this, that by section 39 of the act the registrar of professions and trades is made a sort of secretary and treasurer for the board to receive all applications for licenses, and to collect all fees fixed by law in connection with the work of that board. His other duties, in so far as this board is concerned, must be performed with the consent of the board, and no judicial function of the board is conferred upon this official, if it be conceded that the board of law examiners is a judicial body.

The extent to which the act touches the supreme court is that by section 16, section 12, subsec. 7, and section 21 the department of finance and taxation and the commissioner of finance and taxation are given certain authority over the expenditures of the court. This authority so given does not, we think, infringe upon any judicial perogative of the court. Whether it touches upon the court's inherent and statutory power of administration with reference to its own business is another question, but a question not at all material in determining whether the act undertakes to regulate the exercise of the judicial powers of the court.

The state equalization board and the fire prevention commissioner are not judicial officers. They are executive officers or administrative officers, and a statute designed to deal with the executive part of the government may properly legislate concerning these officials.

It is true that quasi judicial powers are conferred on such officers, but that does not make them judicial officers. In *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664, it is shown that as a matter of practice it has been found impossible to entirely preserve the theoretical lines between the three departments of government. In *Woods* v. *State,* 130 Tenn., 100, 169 S. W., 558, L. R. A., 1915F, 531, it is noted that judicial powers are commonly conferred on sheriffs, clerks of courts, notaries public, registers of deeds, district attorneys general, and other administrative officers.

We know, too, that the power to make rules is commonly given to boards and commissions. 12 C. J. 847; *Woods* v. *State,* supra. These rules have the force of statutes, and their formulation is really the exercise of a legislative power.

So the fact that certain limited judicial and legislative powers are conferred upon executive officers does not change their status as such officers, nor is it inappropriate or beyond the scope of a statute dealing with executive officers to confer such powers.

Since it is the customary and usual thing to endow executive officers with some legislative and judicial authority, we do not think such matter in this act made it broader than its caption.

The statute before us undertakes to deal, it is said, with about sixty commissions, boards, departments, and officers

prosecuting the greater part of the various activities of the state government. It is urged that all these functionaries cannot be grouped and their duties regulated in one statute, and that an act affecting them all is omnibus legislation and in violation of the constitutional provision against more than one subject in one act.

It has been held in Tennessee since *Cannon* v. *Mathes,* 55 Tenn. (8 Heisk.), 504, that the generality of a title is not objectionable if not made a cover for legislation incongruous in itself, and that the legislature must determine for itself how broad and comprehensive the object of the statute shall be. Our cases are very numerous. The last review of them is contained in *State* v. *Cumberland Club,* 136 Tenn., 84, 188 S. W., 583.

We would hesitate to say what is the limit, if any, to the scope of an act of the legislature suitably entitled. We have many acts covering very wide fields.

For instance, chapter 142 of the Acts of 1875 is entitled "An act to provide for the organization of corporations." In this statute and the amendments thereto is contained most of the corporation law of Tennessee, and its validity has not been seriously questioned. *Railroad* v. *Transportation Co.,* 128 Tenn., 277, 160 S. W., 522.

In *State* v. *McCann,* 72 Tenn. (4 Lea), 17, the court held an act to contain but one subject that dealt with the fees of the clerks of all the courts in this State, the county trustees, registers of deeds, the district attorneys, and the Secretary of State.

In *Carroll* v. *Alsup,* 107 Tenn., 257, 64 S. W., 193, a revenue bill with all its many provisions was held to contain but one subject.

House v. Creveling.

Our uniform statutes, the Negotiable Instruments Law, the Sales Law, the Partnership Law, and others are of the widest range, and cover a multitude of matters, and yet their validity is not doubted.

We cannot say that an act which undertakes to re-organize the administration of the State is omnibus legis-lation, although it may affect sixty officials, so long as unity of purpose is preserved.

The question as to whether the various provisions of an act are congruous and germane is largely a question of fact to be determined upon our knowledge of affairs. *Frazier* v. *Railroad,* 88 Tenn., 138, 12 S. W., 537.

Upon careful examination of the statute before us, we think its object or purpose is sufficiently expressed in the title, and that its provisions are germane to the title, and not incongruous with each other.

Some reference is made to authorities in other states upon the limits of a legislative enactment. We cannot go into these, since we have so many cases of our own.

The authorities generally are considered in Lewis' Sutherland on Statutory Construction, section 117, and the author states that "there is no constitutional restric-tion as to the scope or magnitude of the single subject of a legislative act." It may be noted that the supreme court of Kansas held that "An act to establish a code of laws;" embraced but a single subject or object; yet it might in-clude all the state's general statutes. *Bowman* v. *Cockrill,* 6 Kan., 311.

Before passing we should notice a statement in *Acklen* v. *Thompson,* 122 Tenn., 43, 126 S. W., 730, 135 Am. St. Rep., 851, to the effect that a single act could not be passed containing provisions for the protection of game animals,

fish, and birds, and the preservation of the forests of the State. It could not have been intended by this remark to mean that a single act could not be passed conferring upon an official the right to enforce the laws on all these subjects. Certainly a court might be created and given authority by one act to enforce the laws enacted for the protection of game animals, fish, and birds, and the preservation of the forests, and at the same time to enforce all the other criminal laws of the State.

We think the statute under consideration is expressly repealing. This purpose is expressed both in caption and body. *Shelton* v. *State*, 96 Tenn., 521, 32 S. W., 967; *Turner* v. *State*, 111 Tenn., 593, 69 S. W., 774; *Stinnett* v. *State*, 142 Tenn., 94, 217 S. W., 343.

The statute by abolishing numerous offices created by former acts, the incumbents of which offices were to direct the various activities to which said acts devoted the State, thereby, repealed such portions of said former acts as immediately provided for their execution. In section 59 of the act before us some forty-nine offices, commissions, boards, etc., are abolished.

We think the statute does recite in its caption and other wise the title or substance of the laws in part repealed.

Where an act proposes to repeal or amend several laws relating to one subject, it is not necessary for it to recite the title or substance of each previous law separately. One descriptive word or phrase may be employed if it conveys the purport of all the earlier statutes. Thus two acts establishing and defining the powers of the municipal corporation of the city of Knoxville were sufficiently identified by mention of them as the "charter of said city" in a later

amendatory statute. *Heiskell* v. *City of Knoxville*, 136 Tenn., 376, 189 S. W., 857.

To the same effect is *Van Dyke* v. *Thompson*, 136 Tenn., 136, 189 S. W., 62, where the reference was to the charter of Chattanooga.

Again it was held that an amendatory statute made apt reference to our various liquor laws as "the law of the State of Tennessee prohibiting the manufacture, sale, importation, transportation or possession of intoxicating liquors." *Minter* v. *State,* 145 Tenn., 678, 238 S. W., 89.

The substance of all the laws directly trimmed by the act of January 31, 1923, was the creation of officials to carry on for the state various efforts undertaken. These were all executive or administrative officials. Such laws practically furnished the State its administration, and a statute entitled "An act to reorganize the administration of the State, . . . abolishing certain offices, . . . repealing . . . acts and parts of acts," unerringly pointed to the laws it was designed to reach.

Such a reference is clearer and carries sharper notice of the general scope of the repeal than had an effort been made to recite *in haec verba* all the titles of all the previous acts. This would have made a voluminous caption indeed. Members of the legislature were plainly notified by this caption that this act proposed to operate on the earlier laws setting up the administration of the State.

In a late case it was said: "This court has established a liberal interpretation in upholding amendatory acts where the caption and the body of the act taken as a whole, and from a practical standpoint, indicate the subject of the legislation sought to be affected." *Greenwood* v. *Rickman*, 145 Tenn., 361, 235 S. W., 425.

Bearing in mind that we can look both to caption and body of an act to see if it sufficiently identifies former laws sought to be repealed or amended, and looking to the body of this act, we find it supplements the caption and removes any doubt as to the particular laws designed for excision.

Section 59 provides: "That from and after the date upon which this act shall become effective, the following departments, bureaus, offices, boards, commissions and agencies of the state government heretofore created by law shall be and are hereby abolished: [Then follows a list of forty-nine departments, bureaus, offices, etc., state tax commissioner, state board of equalization, state revenue agents, etc.]"

We have heretofore seen that the caption of the act under discussion pointed to the laws establishing the administration or administrative offices of the State as those to be affected. It did not, however, detail these laws. But section 59 abolished the state tax commissioner, "heretofore created by law," the state board of equalization, "heretofore created by law," the state revenue agents, "heretofore created by law," and so on through a list of forty-nine.

To abolish an office created by a law is but a method of repealing so much of the law as creates the office. So that section 59 in equivalent words partially repealed the law creating the state tax commissioner, the law creating the state board of equalization, the law creating the state revenue agents, and partially repealed the laws creating the other officers therein enumerated. The various laws were identified as those creating the various offices. This is entirely adequate, for the substance of each of these laws was the creation of the particular office with provisions

as to the duties thereof.  Such a method of reference is conventional and easily understood.

To further simplify the reference to the laws partially repealed, a list containing the acts of the legislature so treated, enumerated by year of passage and chapter number, is set out in section 64 of the act before us.

It is next insisted that the act of January 31, 1923, was not passed as required by section 18 and section 21 of article 2 of the Constitution.  The charge is that an aye and no vote was not taken on the final passage of the bill in the House, and that the bill was not properly submitted for final passage in the House after it was returned to that body with Senate amendments.  Without going into this, we find no affirmative showing in the House Journal that constitutional procedure was not observed.  Our cases have firmly established the proposition that, where an act of the legislature has been signed by the respective speakers of both houses in open session, and that fact noted on the journals, and has been approved by the Governor as required by the Constitution, every reasonable presumption is in favor of the regularity of its passage, and the act will be sustained unless the journals affirmatively show the absence of some constitutional requirements.  The court will not presume from the mere silence of the Journal that one of the legislative bodies has disregarded the Constitution.  *Jackson* v. *Mfg. Co.*, 124 Tenn., 421, 137 S. W., 757; *Home Teleg. Co.* v. *Nashville*, 118 Tenn., 1, 101 S. W., 770, 11 Ann. Cas., 824; *State* v. *Algood*, 87 Tenn., 163, 10 S. W., 310; *Williams* v. *State*, 6 Lea, 553; *State* v. *McConnell*, 3 Lea, 341.

A majority of the court were without intention to modify this rule in *Webb* v. *Carter*, 129 Tenn., 182, 165 S. W.,

426, further than stated by Chief Justice NEIL. His opinion in that case shows that he accepted the rule, unless it appeared to him that the House was without a constitutional quorum when it acted. And I know that neither Justice LANSDEN (in whose dissent I joined) nor I doubted the authority of the cases cited at all.

It is submitted that the act of 1923 violates section 1 and section 2 of article 2 of the Constitution, which divides the government of the State into three parts, executive, judicial, and legislative, and forbids any person belonging to one department from exercising the powers of another department, "except in the cases herein directed or permitted."

Section 57 of the act provides that with the approval of the Governor the commissioner of each department shall have authority to consolidate any two or more offices created in his department by the provisions of the act, or to reduce the number of, or create new divisions therein. It is said these officers are thus given legislative powers.

We have heretofore noted that certain legislative powers are customarily given to administrative officers. Whether the power here conferre1 on the Commissioners is in contravention of section 1 and section 2 of article 2 of the Constitution is a question that does not arise on this record. It will be time enough to determine this question when it is raised by some removed officer or employee or other person adversely affected.

The final contention of the complainants is that by the act of 1923 they were legislated out of their offices; that these offices were not abolished absolutely and in good faith, but were recreated with substantially the same du-

ties. Complainants say they were thus unlawfully de-
prived of their property rights in violation of section 8,
article 1, of the Constitution of Tennessee, and in violation
of the Fourteenth Amendment to the Constitution of the
United States.

They rely on this court's previous declaration that the
legislature is without power to "take from the officer the
substance of the office, and transfer it to another, to be ap-
pointed in a different manner, and to hold by a different
tenure, although the name of the office is changed, or the
office divided, and the duties assigned to two or more of-
ficers under different names." *Malone* v. *Williams,* 118
Tenn., 390, 103 S. W., 798.

Upon this ground and others the court held unconstitu-
tional chapter 184 of the Acts of 1907, providing a new
charter for Memphis.

The same bench that decided *Malone* v. *Williams,* with
one change in its personnel, three years thereafter found
it necessary to limit the application of the broad doctrine
of that case just above quoted.

Chapter 298 of the Acts of 1909 gave Memphis another
charter—a commission form of government, instead of the
bicameral form. The effect of this act was to abolish cer-
tain offices and to turn out certain officers, and this same
attack successfully made on the act of 1907 was made on
the act of 1909.

This court, however, in an elaborate and carefully consid-
ered opinion by Justice SHIELDS, sustained chapter 298 of
the Acts of 1909. *Hunter* v. *Crump,* MS. Jackson, 1910.
The court held it competent for the legislature to change
the plan of government under which a municipal subdi-
vision of the State had hitherto functioned, when it seemed

best to the legislature to do so; that, although a change might inflict upon municipal office holders the loss of their offices, nevertheless these officers had no such rights to their offices as could be asserted to the frustration or impediment of the new scheme.

Chapter 10, Private Acts of 1911, provided a new charter for Chattanooga, dispensed with certain offices and officers, and *Malone* v. *Williams* was invoked against that Act. The court, though, followed *Hunter* v. *Crump,* and Justice BUCHANAN in a published opinion said:

"But there is a public necessity that the legislature shall have power to abolish an office when it has ceased to be a necessity to the public, or when it forms a part of a scheme of municipal government, and its abolition is necessary, or so deemed by the legislature, in order that a better form of municipal government may be conferred; and here, or in this class of cases, because and by reason of the public necessity that this power should exist in the legislature, the incumbent of the office holds it subject to the legislative power, and the right to abolish whensoever that power and right may be exercised by legislative enactment not otherwise in conflict with the Constitution." *Van Dyke* v. *Thompson,* 136 Tenn., 136, 189 S. W., 62.

In 1915 the legislature adopted a new system for the penal reformatory and charitable institutions of the State. By chapter 20, Acts of that year, these institutions were placed under the direction of a "board of control." Chapter 3 of the Acts of 1915 repealed chapter 125 of the Acts of 1897, providing for the management of the state penitentiary. Under the act of 1897 one Linkous held the office of chaplain at the Brushy Mountain branch of the state peni-

tentiary. The two acts of 1915 deprived Linkous of his office. He sought to recover it on the authority of *Malone* .v. *Williams,* but that case was again distinguished and the court said:

"Appellant insists that the two acts, when construed together, indicate a purpose to legislate him out of office, while leaving the office with its duties unimpaired. But the answer to this is that, if the legislature considered that chapter 125 of the Acts of 1897 should, in the interest of the public be repealed because a better scheme for the man- agement of the state penitentiary could be enacted, then it was not only within the competency, but the duty of that body to repeal the act of 1897, and substitute therefor appropriate legislation; and this although an incident of the repeal might be the shortening of the relator's existing term of office. . . ."

"The effort was not to recreate or revive the same system with appellant eliminated. The conclusion reached was that the penal, reformatory, and charitable institutions controlled and operated by the State should be under the management of a state board of control, such as is created by chapter 20 of the Acts of 1915; and, having reached that conclusion, the legislature set about the accomplishment of the reform. Chapter 125 of 1897 was an obstacle. It stood in the way of the contemplated reform, and for that reason it was repealed. It was appellant's misfortune that the act on which his office hung stood in the way of a scheme for better government of the State's institutions." *State ex rel. Linkous* v. *Morris,* 136 Tenn., 157, 189 S. W., 67.

It should be observed that Chief Justice NEIL, who prepared the opinion of the court in *Malone* v. *Williams,* con-

curred in these later decisions. They have been followed in unreported cases, and it is now settled law in Tennessee that the legislature may adopt a new system of government for a municipal corporation or for such institutions or agencies of the state as are not protected by the Constitution, and to this end the legislature may abolish the old plan and the offices created for the administration of the old plan in whole or in part. The rights of officers thus affected must give way to what the legislature conceives to be the public interest. This, of course, assumes the change in form of government to be real, and not colorable, for the purpose of putting one set of men out of office and another set in office.

The *bona-fides* of a new order cannot be tested alone by the transfer of the duties of old offices to new ones, as has been argued. Such a test would make it impossible to put a new scheme of government into effect, unless intrusted to the old hands. There are particular services that must be rendered by some one in any form of government, and a new system cannot be stricken down because it proposes to continue to discharge essential duties. Old offices may be abolished, not only when their functions become useless, but when, as constituted, they do not fit into the new scheme.

Now, the act of January 31, 1923, inaugurates a new regime. This proposition is not debatable. Heretofore the administration of the government of the State has been one of distributed powers. Hereafter the "administration," using the word as previously defined, is to be one of centralized power, the governor controlling.

What place could such offices as complainants have been filling have in the new system?

The members of the highway department were chosen by the secretary of state, comptroller, and treasurer, with the consent of a former Governor. Chapter 149, Acts of 1919.

The tax commissioner and the members of the board of equalization were chosen by the legislature. Chapter 113, Acts of 1921.

The warden of the main prison was appointed by a former Governor. Chapter 39, Acts of 1919.

These officials all had their tenure, compensation, duties, and responsibilities fixed by statutes. They could not be removed except for cause. Wide latitude was given them in the conduct of their work. If they differed from the Governor as to the policies of their offices, he was helpless during their terms. The tax commissioner and the board of equalization were entirely independent of him; the highway department nearly so.

The duties of the old highway department are transferred to the department of highways and public works by the act of 1923.

The duties of the warden are transferred to the department of institutions.

The duties of the tax commissioner and the board of equalization are transferred to the department of finance and taxation. A new board of equalization is organized in connection with the department of finance and taxation, consisting of the Governor, the commissioner of finance and taxation, the superintendent of taxation, the treasurer, and the secretary of state.

The commissioner of finance and taxation is appointed by the Governor, and the superintendent of taxation is appointed by the commissioner of finance and taxation; so

147 Tenn.—39

that the Governor dominates this new board of equalization.

The commissioners of the eight departments established by the act of 1923 are appointed by the Governor and hold office "at the pleasure of the Governor."

The officers, assistants, and employees of each department are designated by the commissioner of that department "with the approval of the Governor," and are subject to "employment regulations established by the department of finance and taxation."

It is thus obvious that no official nor group of officials ordained by the new law can successfully oppose the judgment of the Governor or gainsay his will. It was frankly stated at the bar that the design of the act of 1923 was to confer upon the Governor absolute authority in the administrative affairs of the state.

Of a truth, then, officials otherwise selected than by the Governor, not amenable to him, independent of his wishes, with tenures fixed, and broad powers conferred by statute, are out of place in the plan adopted. They could defeat the Governor's most cherished purpose. As stated by Justice BUCHANAN, they would stand in the way of what the legislature considered "a scheme for better government of the State's institutions." *State ex rel. Linkous* v. *Morris,* supra.

We might speak of the co-ordination and consolidation and economy and efficiency in the work of government referred to in the act of 1923, and how that, if the enactment has such tendencies, these considerations are paramount to the rights of office holders. This, however, would require some examination of the controversy as to the probable drift of the act, and we think we have said enough.

The new order of things is assailed by complainants' counsel as radical and inspired by the unrest of the people occasioned by extraordinary times.

It is acclaimed by defendants' counsel as a return to fundamental principles, making the Governor the chief executive in fact, as well as in theory.

No expression from the court as to the wisdom of the statute would be seemly. We should say, however, since in our opinion it deals alone with duties anad functions essentially executive, the centralization of power does not offend the Constitution. All these powers might have been conferred on the Governor individually, and he might have been directly charged with their execution had the legislature deemed it feasible and best so to do.

The chancellor was of opinion that section 14 was invalid and elided it from the statute. No error is assigned upon this action below, and we acquiesce therein.

The act of 1923 is so comprehensive, touches so many things, and so many other laws, it will for a time require some construction. It may be that it contains other provisions that cannot stand, not so far brought to our attention. Nothing, however, has yet been suggested, and we have discovered nothing that goes to its integrity as a whole. Some other minor objections were made to the statute in argument, which we do not think require discussion. They have been considered, but deemed unimportant.

The decree of the chancellor will be affirmed, and complainants' bills dismissed.