KEITH *et al. v.* BEASLEY *et al.*

(*Nashville,* December Term, 1940.)

Opinion filed June 28, 1941.

TRABUE, HUME, DAVIS & GALE and MALONE, WADE & MARTIN, all of Nashville, for appellants.

W. C. CHERRY, JACK KEEFE, THOS. O. H. SMITH, W. E. NORVELL, JR., CARMACK COCHRAN, F. M. BASS, and LARKIN E. CROUCH, all of Nashville, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The four complainants, who were members of the Nashville Civil Service and Pension Board, insist that they were illegally legislated out of office and supplanted by the defendants by Chapter 2 of the Private Acts of 1941. The contention is that under the 1941 Act no new system of civil service was created, and that the change from the old acts was colorable and not substantial and was made for the sole purpose of substituting defendants for complainants.

The bill was demurred to upon the ground that the 1941 Act was valid, and the demurrer was sustained by the chancellor and the bill dismissed.

By Chapter 436 of the Private Acts of 1939, city employees, with certain exceptions, were declared to be civil service employees, and provision was made for their suspension or discharge by the Civil Service and Pension Board. This 1939 Act was repealed by Chapter 1, Private Acts of 1941.

The City of Nashville was incorporated by Chapter 125, Private Acts of 1923, section 49 thereof providing, in part, as follows:

"Be it further enacted, That there shall be a Civil Service and Pension Board of said city, to consist of five members to be appointed by the Mayor, subject to confirmation by a majority vote of the whole number of the members of the City Council. The terms of office of the members of said Board shall be four years and until their successors are appointed and confirmed; and it shall be the duty of the Mayor to certify appointments of the members of said Board to the first regular meeting of the City Council following the Mayor's election and inauguration. The members of said Civil Service and Pension Board shall be at least thirty (30) years of age, and they shall have been bona fide residents of said city for five (5) years next preceding their appointment. The members of said Board shall serve without compensation, and they shall not hold any other public or political office while serving as members of said Board; and in the event any member of said Board shall accept such other office said membership on said Board shall be and become thereby automatically vacated; and thereupon the Mayor shall appoint a successor on said Board for the unexpired term, subject to confirmation by a majority vote of the whole number of City Councilmen; and in case vacancies occur on said Board by reason of death, resignation, removal from the city, inability to serve or otherwise, the Mayor shall fill such vacancies by appointment for the unexpired term, subject to confirmation by a majority vote of the whole number of City Councilmen, at the next regular meeting of said City Council after such vacancy occurs. Said members shall be required to take the same oath as prescribed herein for the Judge of the City Court of said city."

The Mayor, pursuant to the authority thus vested in him, in 1939, appointed complainants to membership on

the Civil Service and Pension Board for a full term of four years, and their appointment was duly confirmed by the City Council.

The old acts did not meet the requirements of a complete and effective civil service system since the power of appointing employees of the City, as well as members of the Civil Service and Pension Board, was vested in the Mayor and those associated with him in administering the affairs of the City.

The primary purpose of the 1941 Act was to create a comprehensive civil service system that would substitute business principles and methods for the spoils system, especially in the matter of appointments by the Chief Executive of the municipality.

In *City of Knoxville* v. *Smith,* 176 Tenn., 73, 77, 138 S. W. (2d), 422, 424, this Court quoted approvingly from 10 Am. Jur., under the title ''Civil Service,'' pp. 921, 922, as follows:

''The unlimited authority of the Chief Executive in public office to appoint and remove all subordinate officials, which prevailed throughout this country during the first century of its existence, resulted in the general adoption of the 'spoils system,' under which public office was made to be the reward for political work, with the resulting evils of inefficiency, extravagance, the interruption of public business by place hunters, corruption of the electoral franchise, and political assessments.

''The civil service laws are designed to eradicate the system of making appointments primarily from political consideration with its attendant evils of inefficiency and extravagance, and in its place to establish a merit system of fitness and efficiency as the basis of appointments to the civil service.''

Some of the material changes inaugurated in the 1941 Act are the following:

1. Created a Clerk for the Civil Service and Pension Board.

2. Applications for civil service positions shall be filed with the Clerk.

3. The Board is required to examine applicants by open competitive examinations as to suitability, physical fitness and other qualifications, and no question in the application or examination is to elicit information concerning the political or religious opinions or affiliations of any applicant.

4. The members of the new Board were named by the Legislature, and in case of a vacancy same is to be filled by the remaining members of the Board, subject to confirmation by the City Council.

5. The term of office of members of the Board is changed from four years to an unlimited time.

6. Creates and provides for a comprehensive merit system for the appointment and promotion of City employees, and for a complete administration of employee personnel under the jurisdiction and supervision of and by the Board.

7. When civil service positions are to be filled the employing board or officer of the City is required to notify the Civil Service and Pension Board of such vacancy, whereupon the latter shall certify from the eligible list the names of the three persons thereon who bear the highest rating, one of whom shall be chosen to fill the vacancy.

8. The Board is required to keep a complete merit and demerit system with a record of each civil service employee.

9. Makes provision for promotions in the service based upon merit rather than political preferment.

Other changes, perhaps not so material, are:

(a) Members of the new Board must be *bona fide* residents of Nashville or Davidson County for two years, while the old act required that they be *bona fide* residents of Davidson County for five years.

(b) Does not apply to school teachers, as the old act did, they being placed under civil service by a different act.

(c) At least one member of the Board must be a licensed attorney.

(d) When a civil service employee is dismissed by the Board he can have a hearing *de novo* in the circuit court, while under the old act he can only have his case reviewed in the courts for illegality or want of jurisdiction.

It may be stated that the Legislature has attempted to divorce civil service employees as far as possible from politics and the domination and control of the administration in office.

██ We are of the opinion, therefore, that the 1941 Act creates a much more adequate and comprehensive system of civil service than was contained in the old act. It revolutionizes the civil service system and inaugurates a practically new system. The following statement by Justice BUCHANAN in *State ex rel. Linkous* v. *Morris*, 136 Tenn., 157, 163, 189 S. W., 67, 68, is apposite: "We cannot hold, on the mere averment in appellant's petition and brief, that behind each of these important acts there lurked the purpose to despoil appellant of his office. The source from which courts draw their conclusions as to the purpose of an act is the title and the body thereof. Tested in this way, the legislation appears to disclose an exercise by the Legislature of its judgment in the interest

of the state, in the creation of a new and broader system, distinct in essential particulars from the former one. The effort was not to recreate or revive the same system with appellant eliminated.''

We consider the changes in the new act fundamental so as to bring it within the principles announced in *House* v. *Creveling*, 147 Tenn., 589, 250 S. W., 357; *Haggard* v. *Gallien*, 157 Tenn., 269, 8 S. W. (2d) 364; *Holland* v. *Parker*, 159 Tenn., 306, 17 S. W. (2d) 926; *Caldwell* v. *Lyons*, 168 Tenn., 607, 80 S. W. (2d), 80, 100 A. L. R., 1152; *Gallien* v. *Miller*, 170 Tenn., 93, 92 S. W. (2d), 403; *Townsend* v. *Ray*, 174 Tenn., 634, 130 S. W. (2d), 96, and *Baird* v. *Baird*, 175 Tenn., 350, 134 S. W. (2d), 166.

The point is stressed that under the 1941 Act the power to confirm is still lodged in the City Council. That is intended as a check upon the appointing power and serves a useful purpose. As a practical proposition, however, under such a system it is only in extreme or unusual cases that the appointee is not confirmed.

It is argued, further, that complainants are as well qualified to administer the act as are the defendants. But, as pointed out in *Townsend* v. *Ray, supra*, the fact that both boards perform substantially the same duties is not controlling. The same argument was advanced in *State ex rel. Linkous* v. *Morris, supra*; *Goetz* v. *Smith*, 152 Tenn., 451, 278 S. W. 417, 420; *Haggard* v. *Gallien, supra; Caldwell* v. *Lyon, supra*; and numerous other cases. But, as stated by Chief Justice GREEN in *Goetz* v. *Smith, supra*:

''It cannot at this time be contended that an office holder may complain, if in the public interest, and by way of putting into effect a new system, the Legislature re-

peals statutes, the effect of which is to abolish offices not protected by the Constitution.''

A careful perusal of the Act of 1941 convinces us that it is fundamental and substantial and not colorable, designed to legislate complainants out of office, as was the case of *Smith* v. *Sells,* 156 Tenn., 539, 3 S. W. (2d), 660, and *Traywick* v. *Gilkey,* 167 Tenn., 465, 71 S. W. (2d), 676.

Entertaining the views expressed herein, it follows that the decree of the chancellor will be affirmed.