STATE EX REL. EUGENE DEBS CARSTATER v. CIVIL SERVICE BOARD OF MINNESOTA AND OTHERS.[1]

July 2, 1943.

No. 33,472.

[1]Reported in 10 N. W. (2d) 422.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *George B. Sjoselius* and *Charles E. Houston,* Assistant Attorneys General, for appellants (respondents below).
*Drake & Drake,* for respondent (relator below).

THOMAS GALLAGHER, JUSTICE.

This is an appeal from a district court order vacating an order of defendant state board of education discharging relator from his position as state director of vocational education.

Subsequent to his discharge, relator by writ of *certiorari* sought review of the order discharging him and of the order of the civil service board denying his request for a hearing thereon. The district court thereupon made the order above indicated, from which this appeal is taken.

Appellants assert that the action of the board of education discharging relator was within its power, in that he did not have a status as a permanent civil service employe at the time of his discharge. Relator contends that he did have a permanent status at the time, and hence that he was discharged in violation of the civil

service act, under which he was entitled to a formal hearing upon written charges before the civil service board before he could be effectively separated from his position.

On April 22, 1939, the effective date of the state civil service act, L. 1939, c. 441, Minn. St. 1941, §§ 43.01 to 43.36 (Mason St. 1940 Supp. §§ 254-51 to 254-87), relator was employed by the board of education as administrative assistant. On June 3, 1939, he was promoted by the board to the position of director of vocational education, effective July 1, 1939.

Prior to April 22, 1939, he had been employed in various activities in different state departments and at the state university for a total of seven years and four months. Three years and six months of this period were served at the university, during much of which time he was paid partially from funds contributed by the Carnegie Foundation. Eliminating relator's time at the university, his state employment on the effective date of the act was three years and ten months.

Section 10(1) of the act, *Id.* § 43.10, subd. 1 (§ 254-58[1]), provides:

"All persons holding offices or employments in the classified service on the effective date of this act who have been employed by the state, which employment need not be continuous, for a total of five years or more prior to the effective date of this act; * * * and who are employed by the state on the effective date of this act, shall automatically receive a civil service status without examination and shall be subject to and protected by the provisions of this act, but shall first be subject to the following: (a) the general classification directed to be made by section 12 of this act; and, (b) the six months' probationary period provided by section 21 of this act. The probationary period * * * shall begin to run on the effective date of this act."

It is conceded that relator held office in the classified service, as designated in said section, on the effective date of the act and thereafter. On July 12, 1939, he filed with the civil service board, on

forms submitted by it, data setting forth the complete history of his employment by the state, showing a total of seven years and four months' employment in various state departments, and included therein his employment by the university, believing that it was all to be included in determining whether he had the requisite five years' state employment to entitle him to the status of a permanent employe as provided in said § 10(1).

Section 21, *Id.* § 43.21 (§ 254-69), referred to in § 10(1), includes the following provision:

"At the end of the probationary period the appointing officer shall notify the director, in writing, whether the probationer is a satisfactory employee and should receive the status of a permanent appointee. *Upon such notice, the employee,* if his service during the probationary period did not fall below such minimum standards as have been prescribed by the director of the civil service, *shall be deemed to have a permanent classified civil service status."* (Italics supplied.)

Pursuant to this section, following the six months' probationary period ending October 22, 1939, the board of education, which was relator's "appointing officer," notified the civil service board, in writing, that relator had satisfactorily passed his probationary period, with the title of director of vocational education. Thereupon he was so classified pursuant to § 12(1), *Id.* § 43.12, subd. 1 (§ 254-60[1]), and continued in such capacity thereafter.

On August 7, 1940, Dr. Julius Boraas, president of the board of education, was advised by the attorney general that relator did not have the necessary five-year employment record at the time the civil service act went into effect and therefore was not entitled to his permanent classified civil service status. The attorney general's opinion was based upon the contention that relator's employment at the university could not be included in computing his record under § 10(1) of the act. Following this opinion, on September 5, 1940, charges against relator were filed by the board of education with the director of civil service, and relator's removal as director

of vocational education was requested pursuant to § 24 of the act, *Id.* § 43.24 (§ 254-72), upon the grounds, among others stated, following:

## "III.

"That the said Eugene Debs Carstater falsely and knowingly misrepresented the facts as to his qualifications and experience on the civil service questionnaire, made and filed by him with the Director of Civil Service of the State of Minnesota, and therein knowingly and fraudulently claimed that he had been an employe of the State of Minnesota for a period of seven years prior to August 1, 1939, when in truth and in fact, as he well knew, he had not been an employee of the State of Minnesota for a period of seven years but in fact only for a period of forty-four months.

\* \* \* \* \*

## "V.

"That said Eugene Debs Carstater, on or about the month of August, 1938, while employed by the State of Minnesota, Department of Education, Division of Vocational Rehabilitation, attempted to use the powers and duties of his office for political purposes, and at Caledonia, Minnesota, stated to Mrs. Inoh Hefte, the mother of two crippled girls, in substance: That he would obtain positions for these girls, if the parents supported the Farmer-Labor party \* \* \*"

Relator denied these charges and demanded a hearing before the civil service board. Upon such hearing, this board found the charges to be untrue, and, on December 9, 1940, reinstated him in his position and ordered that compensation, amounting to $650, be paid him for his lost time. Its findings included the following:

"That the following reasons submitted in substantiation of the termination of the employment of said Eugene D. Carstater, namely:

\* \* \* \* \*

"(e) that he falsely and knowingly misrepresented his qualifications and experience on his Civil Service questionnaire;

"(f) that he attempted to use the powers and duties of his office for political purposes * * *

\* \* \* \* \*

"were not sustained by the evidence submitted and the testimony taken."

The board of education thereupon caused proceedings to be instituted in the district court of Ramsey county to review the decision of the civil service board. On February 8, 1941, the court made its order sustaining the civil service board in all respects. Thereafter, the board of education refused to comply with the order to reimburse relator for lost wages. The court thereupon ordered the members of the board to appear and show cause why they should not be adjudged in contempt for failure to obey the court's order. On May 7, 1941, the court made its order adjudging the board of education in contempt, and again ordered payment of relator's back salary.

On March 4, 1941, while the contempt proceedings were in progress, the attorney general rendered another opinion to the effect that employment at the university was not to be included in computing the five-year period specified under § 10(1). Based upon this second opinion, relator was again advised that he did not have a status as a permanent employe and that therefore he would be required to take a qualifying examination as provided in § 10(2) and thereafter serve another six months' probationary period.

Under protest, relator took the examination and passed it as of April 8, 1941. On April 25, 1941, the board of education notified relator that he was again discharged from his position as director of vocational education. No reasons were assigned for such action. Thereupon relator sought review of such proceedings before the civil service board. These proceedings followed the refusal of the civil service board to grant such hearing.

A careful examination of the record indicates clearly that relator was given a permanent classified civil service status as director of vocational education upon the expiration of his probationary period on October 22, 1939. Whether the status so as-

signed was based upon incorrect information, or upon incorrect conclusions drawn from correct information, does not appear to be important. It is conceded by all parties that there was no misrepresentation on the part of relator. He advised the civil service board fully as to all details of his employment. Upon this information, after he had successfully passed through his probationary period in accordance with the provisions of § 21 above referred to, he was certified by his appointing officer as a satisfactory employe in the position he then held. Such certification was accepted by the civil service board, and relator received the classification of and rate of pay provided for director of vocational education in accordance with the provisions of § 12(1). He was carried on the state records in the classification thus assigned to him for a substantial period of time thereafter.

There is nothing in the civil service act which authorizes either the appointing officer or the civil service board or its director to arbitrarily deprive a state employe of his status once it has been established. Section 24 provides an orderly procedure for removing civil service employes for cause. There was no attempt here to follow such procedure. On March 25, 1941, the civil service board, without notice to relator, merely removed his name from the list or roster of permanent employes in the classified service and placed it upon the roster of probationary or temporary employes, and notified him that he was required to take the qualifying examination. On April 25, 1941, after he had successfully passed the examination, he was arbitrarily dismissed from his position by resolution of the board of education.

We find no support in the civil service act nor in any of the authorities cited for the actions of appellants in this respect. The only justification they urge for their procedure is that the original classification was based upon erroneous information. However, it would be unreasonable to hold that because of some early irregularity in the proceedings fixing relator's status, or because of some erroneous conclusion of the civil service board or the board of education in connection therewith, they could long afterwards make

*ex parte* corrections of their previous determinations or reopen and redetermine questions long since deemed final by all parties concerned. For application of this principle see State ex rel. Childs v. Wadhams, 64 Minn. 318, 324, 67 N. W. 64; State ex rel. Furlong v. McColl, 127 Minn. 155, 162, 149 N. W. 11; State ex rel. Milwaukee County v. Buech, 171 Wis. 474, 177 N. W. 781, 784; and Field, Civil Service Law, pp. 102, 106.

Every act of both boards prior to these proceedings indicates clearly that they had fixed and determined relator's status as a permanent employe as of October 22, 1939, and there is nothing in the record to show that such status was ever changed under the provisions of the civil service act.

There must come a time when a state employe is entitled to know that his classification and status have been finally determined. Section 21 provides that after the probationary period and after the notice required therein, the employe *"shall be deemed to have a permanent classified civil service status."* (Italics supplied.) Section 12(3), *Id.* § 43.12, subd. 3 (§ 254-60[3]), provides that an employe, dissatisfied with his classification, may appeal within 30 days after notice to him thereof. A fair construction of these sections would indicate that, in the absence of fraud, upon the successful termination of the probationary period, if no appeal be taken, the employe is entitled to, and gains, as of such date, the status of a permanent employe in the classification then designated, and is thereafter fully protected by the terms of the act.

Accordingly, we hold that under the provisions of the civil service act relator acquired a permanent civil service status in the position of director of vocational education on October 22, 1939; that he has never been separated from such position in accordance with the provisions of the civil service act; and hence that the court was correct in vacating and setting aside the order of the board of education discharging him, contrary to the provisions of the civil service act.

■ Appellants urge that regardless of prior proceedings herein we should definitely determine relator's status upon the record now

presented, in that it contains complete data as to his employment history prior to April 22, 1939. It would seem to be improper to pass upon the effect of such prior employment upon the record here before us. Relator was denied the right to submit evidence or otherwise defend himself against the contentions and claims of appellants, who sought to determine his rights in *ex parte* proceedings and in disregard of the provisions of the civil service act. For such reasons, the record is incomplete and insufficient as a basis for determining his rights here. However, regardless of this, it appears unnecessary to proceed further in this direction in view of our ruling that relator's status as a permanent employe became final upon the expiration of his probationary period, notwithstanding the fact that it may have been based upon erroneous conclusions of appellants at that time. Our decision on this point makes it unnecessary to determine the effect of relator's employment prior to April 22, 1939, and should serve as a sufficient guide for any further proceedings that may be taken herein.

■ Appellants urge that relator's position as of April 22, 1939, should govern his classification, and that, since his position on that date was that of administrative assistant, in any event, he was not entitled to the classification of director of vocational education, the position to which he was promoted on July 1, 1939. The position of administrative assistant was abolished by the board of education on June 3, 1939. Section 10(3), *Id.* § 43.10, subd. 3 (§ 254-58[3]), provides:

"Except as in this act otherwise specifically provided, until August 1, 1939, all persons holding offices or employments in the classified service may be laid off, suspended, transferred, discharged, promoted, reduced, or discharged and reinstated as temporary employees, at the will and pleasure of the authority employing them, subject, however, to such laws as are not expressly repealed by this act."

Section 21 provides that at the end of the probationary period the appointing officer shall notify the director whether the probationer

is a satisfactory employe and entitled to the status of a permanent employe. The act does not provide that the employe's classification at the end of his probationary period shall be in the position held by him on the effective date of the act. Apparently it was contemplated by the legislature in adopting § 10(3) that an employe might be entitled to, and could receive, a promotion prior to August 1, 1939, and thereupon be classified in his new position upon the expiration of the probationary period on October 22, 1939. Section 10(1) limits the probationary period of five-year employes to six months from the effective date of the act, and makes no exception for those employes promoted in the interim prior to August 1, 1939, under the aforesaid § 10(3).

All parties involved appear to have given this construction to said sections of the act. The board of education certified relator to his new position on October 22, 1939. The civil service board forwarded a questionnaire to all employes, whereby the board sought information as to their employment on the date of the questionnaire—July 12, 1939, rather than as of April 22, 1939, the effective date of the act. The civil service board accepted the certification of the board of education on October 22, 1939, and classified relator in the position which he then held. It again recognized his classification at the time the first charges were filed against him, and it granted a hearing thereon.

Under all the foregoing circumstances and under the clearly defined provisions of the civil service act, we hold that relator acquired a permanent classified civil service status as director of vocational education as of October 22, 1939, and that the action of the board of education in discharging him therefrom was unauthorized and without the requisites of due process provided for in the civil service act.

Order affirmed.

MR. JUSTICE MAGNEY, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.