THE METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY, GEORGE A. KARSCH, JR., etc., et al.
Appellants,

*v.*

ROBERT R. POE, JAMES L. HARRISON, etc., et al., Appellees.

383 S.W.2d 265.

(*Nashville,* December Term, 1963.)

Opinion filed October 21, 1964.

54

NEILL S. BROWN, Director of Law, Metropolitan Government, SEYMOUR SAMUELS, JR., Deputy Metropolitan Attorney, EDWIN HUNT, Special Counsel for Metropolitan Government, ROBERT B. PURYEAR, III, for Civil Service Commission, Nashville, for Metropolitan Government.

JACK NORMAN, SR., ELKIN GARFINKLE, Nashville, for Robert R. Poe.

CECIL BRANSTETTER, Nashville, for James L. Harrison et al.

MR. JUSTICE WHITE delivered the opinion of the Court.

This bill was brought under the Declaratory Judgments Act seeking a decree declaring the rights of the parties upon the matters set out in detail therein.

The proceeding herein was commenced by the Metropolitan Government of Nashville and Davidson County, Tennessee, herein referred to as "Metropolitan Government", and its Personnel Director, George A. Karsch, Jr., its Finance Director, Joe E. Torrence, and its Purchasing Agent, E. D. White, against certain employees of the Metropolitan Government in their individual capacity and as representatives of a class, the members of the Metropolitan Civil Service Commission, who are referred to herein as the Civil Service Commission, and Robert R. Poe, the duly elected Sheriff of Davidson County, who took the oath and assumed the duties of his office on September 1, 1964.

The cause was heard by the chancellor on the original and amended bills, the answer and cross-bill of James L. Harrison, et al, the answer of W. C. Greer, et al, comprising the membership of the Civil Service Commission, and the answer of the complainants to the cross-bill of said Harrison, et al, and particularly upon the motion of Robert R. Poe to dispose of the demurrer filed by him and upon the motion of the complainants to hear the cause on bill and answers filed thereto.

The chancellor sustained the demurrer filed by Poe and dismissed the original bill, as amended, and the cross-bill filed by certain defendants, and dissolved the temporary injunction theretofore issued by him in aid of the original bill. From his action there has been a broad appeal to this Court.

The appellants contend that this case involves only questions of law and they are of vital importance to the Metropolitan Government of Nashville and Davidson County and to the basic concept of city-county consolidation. The cause is concerned with the relationship of the duly elected Sheriff, Robert R. Poe, to Metropolitan Government in matters of duties, functions, budgeting, purchasing and personnel policies, and with the validity of certain acts of the Civil Service Commission. We are required to re-examine the whole matter of law and fact appearing in this record and from this make a final decision. T.C.A. sec. 27-301.

The issues raised here are:

(1) May the Civil Service Commission, under Article 12 of the Charter, adopt rules granting civil service status to all employees who on the date of the adoption of the rules (August 18, 1964) had been employed in positions

in the classified service for at least six months, or who were so employed on said date and remain in such employment for six months from the original date of employment and who are certified by the original appointing authority as being fully qualified for their position?

(2) Is the Sheriff under the Metropolitan Charter an official of the Metropolitan Government subject to the functional, budgetary, purchasing and personnel provisions of the Charter and ordinances adopted pursuant to the Charter?

(3) Are the criminal law enforcement powers and authority in the area of the Metropolitan Government vested in the Metropolitan Chief of Police exclusively?

In passing upon these questions we state, first, that Section 2 of Chapter 120, Public Acts of 1957 (T.C.A. sec. 6-3702), declares it to be the legislative intent and purpose to provide for the consolidation of all, or substantially all, of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located, and to provide for the creation of Metropolitan governments which may be used to fulfill the unique and urgent needs of a modern metropolitan area.

The Section further provides that the entire chapter is declared to be remedial legislation to be liberally construed as a utilization of the constitutional power granted by Amendment 8 to Article XI, Section 9 of the Constitution of Tennessee, approved at an election on November 3, 1953.

This same Section recognizes the existence of certain constitutional officers and it is said that the functions of none of the governing bodies of the county and municipal corporation, so consolidated, or of the officers thereof, shall be retained and continued unless the Charter of the Metropolitan Government shall expressly so provide, or unless such retention and continuation be required by the Constitution of Tennessee.

Since this Charter was drawn and approved by the people of the affected area, there have been several matters in regard thereto submitted to the courts for clarification and resolution. The first case was that of *Frazer v. Carr,* 210 Tenn. 565, 360 S.W.2d 449 (1962), in which it was held that the Charter did not offend the Constitution of Tennessee.

The next case, in order of publication, was that of *Winter v. Allen,* 212 Tenn. 84, 367 S.W.2d 785 (1963). This case approved the Charter provisions which transferred the duties of assessing merchant's ad valorem taxes from the county court clerk where they had been lodged by general statute, to the tax assessor of the Metropolitan Government.

The third case was that of *Robinson v. Briley,* 213 Tenn. 418, 374 S.W.2d 382 (1963), which approved the transferal of certain functions and duties from the county trustee, lodged there by general statute, to the Metropolitan Treasurer.

In *Winter v. Allen* we stated that *State ex rel. Hays v. Cummins,* 99 Tenn. 667, 42 S.W. 880 (1897), declared unconstitutional an Act which sought to take from the sheriff a *substantial part* of his rightful duties. We distinguished the Cummins case from *Winter v. Allen* on

the ground that the county court clerk had many duties and many functions, the assessment of merchant's ad valorem taxes being only one among them.

In *Robinson v. Briley*, supra, we said that *State, ex rel. Hays v. Cummins* had to be confined to the facts appearing therein and consequently the holding was not binding as a precedent on the interpretation of the provisions of the Charter.

Subsection (p) of T.C.A. sec. 6-3711 directs that the consolidation charter provide for such administrative agencies as may be necessary and appropriate to perform the consolidated functions and for this purpose for the alteration or abolition of existing city and county offices.

T.C.A. sec. 6-3702, however, recognizes that certain offices are provided for in the Constitution of Tennessee in this language:

* * * after said consolidation no officer or agency of said county or of said municipal corporation shall retain any right, power, duty or obligation unless this chapter or the charter of the metropolitan government shall expressly so provide, or unless such retention and continuation be required by the Constitution of Tennessee.

Article 7, Section 1 of the Constitution of Tennessee provides that "There shall be elected in each County, by the qualified voters therein, one Sheriff, one Trustee, one Register;" etc. In the Constitution of 1796, Article 6, Section 1, it was provided that "There shall be appointed in each county, by the county Court, one sheriff, one coroner, one trustee", etc.

In the Constitution of 1834, by Article VII, Section 1, it was provided that "There shall be elected in each

County, by the qualified voters therein, one Sheriff, one Trustee, one Register'', etc.

■ It is obvious that express provisions have been made in all three Constitutions adopted by the voters of Tennessee for the office of Sheriff, and any language that may have been employed in any prior decisions of this Court, and particularly in *Robinson v. Briley,* supra, from which it might be remotely concluded that we held the office of Sheriff or any other constitutional office could be or was abolished by the Charter was a mere inadvertence and not meant to be a holding of this Court.

The only method by which the Constitution may be amended is set out in Article 11, Section 3 of the Constitution itself.

In the recent case of *Glasgow, et al. v. Fox, et al.,* 213 Tenn. 656, 383 S.W.2d 9, released for publication on August 28, 1964, it was said:

"* * * the predominant intent of the Act is to provide for consolidation of 'all,' or 'substantially all,' of the governmental and corporate functions of county and city governments into one new metropolitan government; it does not necessarily require that all functions or officers of the prior governments be obliterated, but leaves a large discretion in these matters to the drafters of the Metropolitan Charter. (See T.C.A. sec. 6-3702).

\*  \*  \*  \*  \*  \*

"It is true that some of the functions of some of these officers were changed or transferred to other officers. For instance, some of the functions of the county court clerk and some of the functions of the tax assessor were changed or transferred to other officers. *Winter v. Allen,* 212 Tenn. 84, 367 S.W.2d 785, supra. Some of

the duties and functions of the county trustee were likewise changed (*Robinson v. Briley*, 213 Tenn. 418, 374 .S.W.2d 382), and some of the duties of the sheriff were transferred to the chief of police; but none of these offices was abolished, and even the incumbents were continued in office.

\* \* \* \* \* \*

"\* \* \* (sec. 8.202) provides for the department of metropolitan police and makes them responsible 'for the preservation of public peace, prevention and detection of crime, apprehension of criminals, protection of personal and property rights, enforcement of the laws of the State' and of the Metropolitan Government."

There are other statements in *Glasgow v. Fox,* supra, but it is not necessary to refer to them here.

We proceed now to dispose of the issues raised in this case in conformity with the general law of Tennessee, the provisions of the Charter, and prior decisions rendered by this and other courts.

Considering now the first issue, that is the validity of Chapter 14 of the Rules and Regulations of the Civil Service Commission, adopted by the Civil Service Commission on August 18, 1964, we recall some of the history of civil service in Davidson County and the efforts made to establish a workable system and prevent abuses thereof.

A reference to the Private Acts relating to the City of Nashville will show that the civil service employee has never been secure in his position. On occasion he has lost his civil service status; on other occasions Private Acts have been passed making it possible for an employee to retire on fifty per cent of his wages upon

reaching a certain age (60 years), without regard to the length of his service.

On other occasions Private Acts were passed "blanketing in" certain employees or a certain class of employees as civil service employees thereby resulting in a by-passing of the Rules and Regulations of the Civil Service Commission. See Exhibit "A" to original bill for a reference to at least seventeen such Acts.

The Charter Commission, composed of outstanding and knowledgeable men, fully acquainted with the history of Nashville and Davidson County, and of the situations related above, made provision for a Civil Service Commission and outlined its duties in considerable detail.

Under Section 12.01 it is provided:

"* * * there is hereby established a personnel policy and administration under *which entry into the service shall be on the basis of open competition and service shall be on the basis of merit, efficiency and fitness."* (Emphasis supplied.)

The Civil Service Commission is charged with the responsibility and duty of developing and fostering the effectiveness of this personnel policy in the Metropolitan Government.

Section 12.12, very wisely, provides that nothing in the Charter shall impair or diminish the rights and privileges of existing employees of the County of Davidson or the City of Nashville under civil service; and such rights and privileges shall continue without impairment as obligations of the Metropolitan Government. No effort was made, however, to "cover in" under civil service all employees of the two governments.

A copy of the Rules and Regulations adopted by the Civil Service Commission, under date of August 18, 1964, has been filed in this record and on page 1 of the Regulations the basic objectives are, among other things, "to provide a *uniform policy for all employees*," (emphasis supplied) and to provide equal opportunity to all qualified citizens for employment on the basis of demonstrated merit and fitness as ascertained through fair and practical methods of selection.

By Chapters 3 and 4 of the Rules of the Civil Service Commission entrance examinations are provided for and it is required that such examination shall be announced to the public in order to find qualified applicants for vacancies. General provisions are made for the recruitment, examinations and certifications by or through the Director of Personnel, the complainant Karsch in this case, who shall make every effort to attract qualified applicants to compete in examinations for positions in the Metropolitan Government.

He is charged with the duty of giving public notice of all open competitive examinations at least two weeks in advance of the closing date for receiving applications, by posting notice thereof in or near the Civil Service Office and the delivery of such notice to authorized representatives of at least two local newspapers.

The character of the examination is also set out in said Section 4, and the duties of the Director of Personnel are made quite explicit in regard thereto.

Disregarding the express provisions for entry into civil service work with the Metropolitan Government as provided in Chapter 4, the Civil Service Commission adopted Chapter 14, under date of August 18, 1964.

Sections 1 and 2 of Chapter 14 are summarized in issue (1) above.

Section 3 of Chapter 14 provides that after the effective date of these Rules and Regulations, that is August 18, 1964, no person shall be employed to fill a position in the classified service of Metropolitan Government except in accordance with the procedures outlined in Chapter 4 and other Chapters of the Rules and Regulations of the Civil Service Commission, and that Sections 1 and 2 of Chapter 14 shall not be applicable to any employee employed on or after the effective date of these Rules and Regulations.

It is obvious by said Section 3 that the Civil Service Commission intended to put an end to the wholesale blanketing in of employees into the classified service, but if sanction is given to the action of the Civil Service Commission in adopting Sections 1 and 2 aforesaid, there would be nothing, as held by the chancellor, "to prevent it from changing its rules so as to blanket under civil service other groups of employees without requiring them to follow the regular procedure."

In the case of *State of Tennessee ex rel. Atkin v. City of Knoxville et al.,* 203 Tenn.622, 315 S.W.2d 115 (1958), Chief Justice Neil quoted with approval from McQuillin on Municipal Corporations (3rd ed. 1949), Vol. 3, Sec. 12.80:

" 'A valid appointment can only be made *by due observation of the civil service rules,* and must be made from the appropriate eligible list.' (Emphasis supplied). * * *

"The cases cited by the author in support of the foregoing text are numerous:

" 'The methods prescribed by charter for the making of appointments in the civil service are mandatory and controlling.' *Campbell v. Board of Civil Service Com'rs of City of Los Angeles,* 76 Cal.App.2d 399, 173 P.2d 58.

\* \* \* \* \* \*

" 'No position shall be filled in civil service except in accordance with the Civil Service Acts. It is a condition precedent to permanency that the conditions of the articles be followed, for otherwise the quality of public service would be impaired rather than promoted. Any employment which in its inception violates these prerequisites is illegal, and council cannot endow appointee with permanency of tenure by its own inaction, or by the action of a representative of the municipality. *Healey v. Jones,* 152 Pa.Super. 18, 30 A.2d 732.

\* \* \* \* \* \*

" 'One cannot assert any right to continue to hold a position to which he was not appointed in accordance with provisions of Civil Service Law. *Wolff v. Hodson,* 285 N.Y. 197, 33 N.E.2d 90.' " 230 Tenn. at 625, 315 S.W.2d at 116.

In this case the Court was dealing with the civil service provisions of the Charter of the City of Knoxville and the Civil Service Board waived certain requirements of the Charter. The Court said further:

"The civil service board has no discretion and no authority to set aside or waive a positive requirement of a charter provision. \* \* \*

"Charter provisions are mandatory. They must be strictly not just substantially, complied with." 203 Tenn. at 627, 315 S.W.2d at 117.

This case was referred to in 12 Vanderbilt L.Rev. 1268, and it was said therein that the decision in the aforesaid

case is in accord with authorities cited in Section 12.80, McQuillin on Municipal Corporations (3rd ed. 1949).

■ We have searched with great care the Charter provisions of the Metropolitan Government with reference to civil service and we have been unable to find any authority which would permit the Civil Service Commission to adopt Chapter 14. Such action would do violence to the general provisions of the Charter and the Rules and Regulations of the Civil Service Commission with reference to orderly employment of civil service personnel.

The employees of the Metropolitan Government are entitled to the full protection afforded by the Charter provisions and such Charter provisions are mandatory in regard to their employment and are equally mandatory on the actions of the Civil Service Commission. As said in *State, ex rel. v. City of Knoxville,* supra, "they (the charter provisions) must be strictly not just substantially, complied with."

In 2 Yokley's, Municipal Corporations, Sec. 344, it is said:

"Civil Service systems in the municipalities are the product of enlightened legislation made necessary by a public demand for a twofold program in the city government that would offer protection to both the public to be served and the employees who would render that service."

■ It is a matter of common knowledge that before civil service legislation was enacted, police and fire departments were exclusively under "political" control. The party in power could hire or fire at will in those departments without any particular regard to fitness or

any other characteristic except partisan political activity. *Heidtman v. City of Shaker Heights,* 163 Ohio St. 109, 126 N.E.2d 138; 2 Yokley's, Municipal Corporations, Sec. 344.

In the case of the *City of Knoxville v. Smith,* 176 Tenn. 73, 77, 138 S.W.2d 422 (1940), the Court quoted with approval from the general statement appearing in 10 Am.Jur., Civil Service, pp. 921, 922, the language there being as follows:

"The civil service laws are designed to eradicate the system of making appointments primarily from political consideration with its attendant evils of inefficiency and extravagance, and in its place to establish a merit system of fitness and efficiency as the basis of appointments to the civil service."

The above language was approved in *Keith et al. v. Beasley et al.,* 177 Tenn. 652, 152 S.W.2d 618 (1941).

In the brief submitted on behalf of the Civil Service Commission it is said "covering in" of incumbents who have been employed for a given period of time without civil service status is a common procedure when a new civil service system is adopted and the brief cited a number of cases in support of this statement.

We have examined all of the authority so cited and in the case of *Bente v. Department of Water and Power etc.,* 45 Cal.App.2d 589, 114 P.2d 699 (1941) (Cal.), there was a blanketing in of certain employees but this was done by city charter. In the case of *Grunewald v. Township Committee, etc.,* 18 N.J.Super. 401 87 A.2d 368 (1952) (N.J.), an act of the legislature placing certain employees under civil service was upheld.

In the case of *People ex rel. Kelly v. Dunham,* 313 Ill.App. 18, 38 N.E.2d 983 (1942) (Ill.), city employees

were covered in by an act of the legislature and the same is true in the cases of *Ricker v. Village of Hempstead,* 290 N.Y. 1, 47 N.E.2d 417 (1943), *Shelby v. City of Pensacola,* 112 Fla. 584, 151 So. 53 (1933), and *State, ex rel., Carstater v. Civil Service Bd. of Minn.,* 215 Minn. 515, 10 N.W.2d 422 (1943).

Therefore, by the great weight of authority in this country employees may be "covered in" by a legislative act or through charter provision and as said in McQuillin, Municipal Corporations (3rd ed. rev.) Sec. 12.134, pp. 561-563, it is a common procedure to cover in employees of a governmental unit when a *new* civil service system is adopted.

If the Charter Commission had so desired it could have, most appropriately under Section 12.12 quoted above, placed all employees of both governments under civil service in the *new* consolidated government. Their failure to do so shows a positive purpose not to cover in all employees of both governments.

In the case of *Handlon v. Wolff et al.,* 72 Cal.App.2d 53, 164 P.2d 46 (1946), which is relied upon by the Commission as authority for its action in placing the employees in question under civil service, the Court upheld a statute which provided in part that "[a]ll persons employed in the operating service of any public utility hereafter acquired by the city and county at the time the same is taken over by the city and county, and who shall have been so employed for at least one year prior to the date of such acquisition, shall be continued in their respective positions and shall be deemed appointed to such positions, under, and entitled to all the benefits of the civil service provisions of this charter." This case is not

in point because the covering in of the employees was provided for by statute.

In *Bruce v. Civil Service Board,* 6 Cal.App.2d 633, 637, 45 P.2d 419, 421, the Court said:

"A civil service commission derives its powers from the charter creating it and may not exercise any not directly given or necessarily implied from those conferred."

At page 56, The Law of Civil Service, by Kaplan, General Counsel of National Civil Service League, there is found an extensive treatment on the general subject of "covering in" of employees.

For the reasons aforesaid, we are satisfied that the chancellor was correct in voiding the action of the Civil Service Commission in adopting Chapter 14, on August 18, 1964. On issue (1) he is affirmed.

We now consider the second issue raised on this appeal which contends that the Sheriff is subject to the functional, budgetary, purchasing and personnel provisions of the Charter and ordinances adopted pursuant thereto.

As pointed out earlier in this opinion, the Sheriff is a constitutional officer as set out in every Constitution adopted in this State. His duties, however, are prescribed by statute. We have held in *Winter v. Allen,* supra, and *Robinson v. Briley,* supra, that duties and functions conferred by statute upon the county court clerk and the trustee, both of whom are constitutional officers, may be validly transferred by the Charter to other officers of the Metropolitan Government. We find nothing in the law which would prevent a similar application to the transfer of some of the duties of the Sheriff to the Chief of Police of the Metropolitan Government.

Section 16.05 of the Charter dealing with the functions of constitutional and county officers provides that:

"The Sheriff, elected as provided by the Constitution of Tennessee, is hereby recognized as an officer of the Metropolitan Government. He shall have such duties as are prescribed by T.C.A. 8-810 or by other provisions of the general law, except that within the area of the Metropolitan Government the Sheriff shall not be the principal conservator of the peace. The function as principal conservator of the peace is hereby transferred and assigned to the Metropolitan Chief of Police as set out in Article 8, Chapter 2 of this Charter."

Under said Section, as implemented by ordinance, the Sheriff has custody and control of the consolidated urban and metropolitan jail, as well as the consolidated urban and metropolitan workhouse.

The Sheriff is obligated to take charge and custody of the jail of his county and of the prisoners therein, and to keep them himself, or by his deputies or jailor until discharged by law. (T.C.A. sec. 8-810 (3)). To the same effect is Section 360(3) of the Code of 1858; Section 449 (3) of Shannon's Code; and Section 696(3) of the Code of 1932.

■ The case law of this State is that the Sheriff, by virtue of his office, is the jailor and is entitled to the custody of the jail. *Felts v. Mayor, etc., of City of Memphis,* 39 Tenn. 650 (1859); *State ex rel. Bolt v. Drummond,* 128 Tenn. 271, 160 S.W. 1082 (1913).

■ The Charter Commission, recognizing the established law of this State, made provisions for the Sheriff to remain as the jailor and the keeper of the jail. By an ordinance implementing this provision of the Charter,

the Sheriff now has charge of the urban jail as well as the county jail. This added responsibility is merely an extension of the general duties of the Sheriff as outlined by statute and case law of this State.

Kaplan, The Law of Civil Service, Section 20, p. 80, discusses the historical independent status of the Sheriff as opposed to other officials and says:

> "The Sheriff is liable for his deputies' acts in civil matters and is, therefore, held to be immune from encroachment by the civil service laws. *Griffenhagen v. Ordway,* 218 N.Y. 451, 113 N.E. 516 (1916); *Blackburn v. Brorein,* 70 So.2d 293 (Fla.) (1954)."

The same authority says that:

> "It has been held also that his other employees, except those engaged exclusively in the handling of criminal prisoners, may not be subject to the civil service laws. They are deemed to be the personal appointees of the Sheriff."

In *Flaherty v. Milliken,* 193 N.Y. 564, 86 N.E. 558, it was said that such employees are deemed to be the personal appointees of the sheriff notwithstanding the New York constitutional provision providing for appointment on basis of examination to determine merit and fitness. This case further held that neither the constitutional merit system provision nor the civil service statute, the latter providing no express exception of employees of the sheriff's office, may be made applicable to employees of the sheriff involved to any extent in handling civil prisoners.

Also, in the case of *Blackburn v. Brorein,* supra, the Supreme Court of Florida held a provision of a county

civil service law inapplicable to deputies sheriff of that county.

The court held that the power, duties and prerogatives of a sheriff are exercised not alone by himself, but by his deputies, and they are of such unique character as to make them essentially different from other employees.

Several Tennessee cases have held the Sheriff and his bondsmen directly liable to persons aggrieved by official wrongs of his deputy. In *Ivy v. Osborne,* 152 Tenn. 470, 279 S.W. 384 (1925), the sheriff was held accountable for act of his deputy in serving and executing process; in *Jones v. State,* 194 Tenn. 534, 253 S.W.2d 740 (1952), the sheriff was held liable for damages for the wrongful acts of deputies in shooting at a car driven by plaintiff's son. Also, in *Harris v. Dobson-Tankard Co.,* 41 Tenn.App. 642, 298 S.W.2d 28 (1956), the failure of deputy to use ordinary care not to damage plaintiff's goods in removing them under writ of possession resulted in liability in damages on the part of the sheriff. Lastly, in *State ex rel. Coffelt v. Hartford Acc. & Indem. Co.,* 44 Tenn.App. 405, 314 S.W.2d 161 (1958), the sheriff was held liable in damages for a deputy's official misconduct in using excessive force to arrest a misdemeanant.

T.C.A. sec. 8-2001 provides for the appointment of deputies to clerks and sheriffs and says that a sheriff may employ such deputies and assistants as may be actually necessary to the proper conducting of his office by making application to the judge of the court under whose general jurisdiction he may function. In this petition, seeking the approval of the court, the sheriff shall show the necessity therefor, the number required and the salary that should be paid each. This is a wise provision in the law and makes possible the carrying out of the duties of the

sheriff as enumerated in T.C.A. sec. 8-810 and the general law of Tenneseee.

The Charter of the Metropolitan Government provides that all positions therein shall be in the classified service except those specified in Section 12.08, which are private secretaries of directors, the administrative assistants to the mayor, the executive director or secretary for every board or commission of the Government, deputies of the circuit court clerk, criminal court clerk, clerk and master of the chancery court, county court clerk, trustee, tax assessor, register and court officers, stenographers and clerks appointed by the judges.

It must be remembered that the Sheriff is a duly elected official. His office is provided for by the Constitution of Tennessee. He is also an officer of the Metropolitan Government. Although his office is not mentioned in Section 12.08, we can find no authority and none has been cited us, for excluding the office of Sheriff, an elective office, therefrom. Nor does there appear to be any reason why this office was omitted. Since the objective of this Section is to provide for appointment of those who are in the law the ''alter egos'' of county officers, the Section should apply to the Sheriff as well as those named there-in. We assume that this omission was a mere inadvertence on the part of the Charter Commission and had its attention been directed toward the responsibility of the Sheriff for the operation of the consolidated workhouse, the Commission would have made provision for the appointment of the superintendent or warden by the Sheriff.

■ It is within the power of the Court whenever necessary to effectuate legislative intent to supply language in construing an act, inserting such words and clauses as may reasonably appear to be called for. *Gallagher v.*

*Butler,* 214 Tenn. 129, 378 S.W.2d 161 (1964); *Scales v. State,* 181 Tenn. 440, 181 S.W.2d 621 (1944).

■ The position of superintendent is a responsible and sensitive one and since the Sheriff has the ultimate responsibility for his conduct in the operation of the workhouse, we feel that the superintendent should be his personal assistant or deputy, subject to discharge at will. See also T.C.A. sec. 8-2001.

There are express provisions in the Charter, Section 6.02, providing that the Director of Finance shall obtain from all officers, departments, boards, commissions and other agencies for which appropriations are made by the Metropolitan Government "* * * such information as shall be necessary for him to compile the annual operating budget." It is also made the duty of such person to furnish the Director of Finance such information as he may require at such time or times, and in such form as the Director may prescribe.

The Director obtained such information from the then Sheriff and the Metropolitan Council by its budget ordinance, Exhibit 4 to complainants' original bill, appropriated nearly $900,000.00 to the Sheriff for the operation of his department during the current fiscal year.

Section 8.109 of the Charter provides for a Division of Purchases and makes it the responsibility of all departments, boards, commissions, officers, etc., to make purchases of supplies through such Division of Purchases.

■ Therefore, it is our opinion that the Sheriff, as an officer of the Metropolitan Government is subject to and bound by the budgetary and purchasing provisions of the Charter.

Turning now to the third issue raised on this appeal, the question presented is whether the criminal law enforcement powers and authority in the area of the Metropolitan Government is exclusively vested in the Metropolitan Chief of Police.

As set out hereinabove, Section 8.202 provides that the Department of the Metropolitan Police shall be responsible for the preservation of the public peace, prevention and detection of crime, apprehension of criminals, etc., enforcement of the laws of the State of Tennessee and ordinances of the Metropolitan Government. Section 16.05 provides that the functions of the Sheriff as principal conservator of peace is divested out of him and transferred and assigned to the Metropolitan Chief of Police, reserving, however, to the Sheriff the duty and obligation of overseeing the consolidated jail and consolidated workhouse.

Under Article 2.01 (36) certain powers are given to the Metropolitan Government, including the power to create, alter or abolish departments, boards, commissions, offices and agencies and to confer upon the same necessary and appropriate authority; but when any power is vested by the Charter in a specific officer, board, commission or other agency, the same shall be deemed to have exclusive jurisdiction within the particular field. Section 16.05 makes such an exclusive vestment in the Chief of Police.

Section 20.11 provides that members of the County Highway Patrol, appointed as such by the Sheriff of Davidson County, are appointed and designated as members of the Metropolitan Police Department.

It is plain to us that it is the purpose and intent of the Charter to take away from the Sheriff the re-

sponsibility for the preservation of the public peace, prevention and detection of crime, apprehension of criminals, protection of personal and property rights except insofar as may be necessary and incidental to his general duties as outlined in T.C.A. sec. 8-810 and to transfer such duties to the Department of Police of the Metropolitan Government.

We believe that this conclusion is amply supported by prior decisions of this Court in *Winter v. Allen,* supra, *Robinson v. Briley,* supra, *Glasgow v. Fox,* supra, and other analogous cases which were considered in upholding the validity of certain acts applicable to Shelby and Davidson Counties only. We refer to the case of *Prescott v. Duncan,* 126 Tenn. 106, 148 S.W. 229 (1912), in which it was held that the Legislature may deprive the county court of all power not conferred upon it by the Constitution.

In the case of *Hancock v. Davidson County,* 171 Tenn. 420, 104 S.W.2d 824 (1937), the Court upheld a Private Act applicable to Davidson County which stripped the justices of the peace of all of their judicial functions and transferred them to a newly created Court of General Sessions. This case quoted with approval from the case of *Prescott v. Duncan,* supra, and said that it (*Prescott v. Duncan*) very elaborately considered the constitutional prerogatives of the justices of the peace and held they are very few and that their jurisdiction and powers are largely subject to the will of the Legislature.

The office of justice of the peace is, like the office of Sheriff, a constitutional office, being provided for in Article VI, Section 1 of the Constitution. His powers and duties, however, are like those of the Sheriff, conferred by statute. His duties, and those of the Sheriff, are

provided for in the Acts of 1796 and many subsequent Acts.

In *Hancock v. Davidson County,* supra, these duties and responsibilities (statutory) were taken from the justices of the peace in Davidson County by a *Private Act.* The duties of the Sheriff of Davidson County in regard to criminal law enforcement have been taken from him by the Charter adopted pursuant to a *general* law which, in turn, was specifically authorized by a constitutional amendment. The Charter bears the approval of the people in a plebiscite conducted for that purpose in the area covered by the Metropolitan Government. All power is inherent in the people and all free governments are founded on their authority, and instituted for their peace, safety and happiness. Declaration of Rights, Article I, Section 1, Constitution of Tenneseee.

Therefore, we see no constitutional infirmity against taking this one duty and responsibility from the Sheriff and transferring it to the Chief of Police.

One duty placed upon the Sheriff by the Charter and ordinances enacted pursuant thereto, is that of having the custody and control of the consolidated urban workhouse and metropolitan workhouse.

Anciently and traditionally, the Sheriff has not had this responsibility. In many counties in Tennessee the county highway commission has custody and control of the workhouse because the prisoners therein work on the highways. The director of the street departments of the cities ordinarily has custody and control of the city workhouse because the prisoners therein work on the streets.

Therefore, it is our opinion that in the operation of said consolidated workhouse the Sheriff is bound by

the terms and provisions of the civil service laws of the Metropolitan Government in the employment of persons used in connection therewith, except that the superintendent shall be a personal appointee of the Sheriff for the reasons set forth hereinabove.

In the brief filed on hehalf of Sheriff Poe several decisions of this Court have been relied upon, one of them being *White v. Davidson County,* 210 Tenn. 456, 360 S.W.2d 15 (1962). This case is not in point for the reason that it involved the power of the Legislature to suspend the general law by a private act.

The case of *Glasgow v. Fox,* supra, presented the question of whether the Charter had abolished the office of Constable and if not, whether the number of constables in the new area could be reduced to three. We held that the office of Constable was a constitutional office under Article VI, Section 15, and could not be and was not abolished by the Charter, and that the number of constables had been constitutionally reduced to three.

Any language employed by us over and above that necessary and proper to dispose of the issues presented as aforesaid is not binding on future decisions of this Court.

It is a familiar law that a decision is authority for the point or points decided, and nothing more, and that general expressions in an opinion are to be taken in connection with the case in which they were used, and when they go beyond that, they are not authority for another case. *Shousha v. Matthews Drivurself, Inc.,* 210 Tenn. 384, 358 S.W.2d 471 (1962) ; *Aladdin Industries, Inc. v. Associated Transport, Inc., et al.,* 45 Tenn.App. 329, 353, 323 S.W.2d 222 (1958).

■ It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. These are the words employed by Mr. Chief Justice Marshall in the case of *Cohens v. Commonwealth of Virginia*, 6 Wheat. 264, 398, 19 U.S. 264, 398, 5 L.Ed. 257, 290.

We have had three great Charters in our State, 1796, 1834 and 1870. Each has been designed and framed to better serve the people. The Constitutional Convention of 1953 adopted Amendment 8 to Article XI, Section 9, which provided a method to be followed in consolidating the governmental and corporate functions of a city with those of a county in which the municipality is located. This made possible the creation of an entirely new concept of government.

The Court in construing the Charter provisions of the Metropolitan Government of Nashville and Davidson County has always considered the stated purpose of the Amendment, that is, to consolidate functions of the two former governments so as to eliminate duplication and overlapping of duties and services by which economic savings to taxpayers will be realized.

■ It is our duty to observe the doctrine of stare decisis as one of commanding importance giving as it does firmness and stability to principles of law evidenced by judicial decisions. The Court, however, should not close its doors to the changing conditions, but should so fashion its opinions that the new truly grows out of the old as the product of a changing environment.

We have and do keep this thought in mind in passing upon matters that have and may be presented to us in

regard to this new concept of metropolitan government, looking for precedents where they may be found to guide us, and where there are none, we undertake to apply logic and reason in resolving the complex situations which have been herein and heretofore presented to us.

In order that our opinion may be clear and unambiguous, we hold expressly that:

(1) The action of the Civil Service Commission in adopting Chapter 14, under date of August 18, 1964, is void, as found by the chancellor.

(2) The Sheriff is a Metropolitan officer and as such he is bound by the functional, budgetary and purchasing provisions of the Charter and the personnel provisions, except as noted in (3) and (4).

(3) The Sheriff may appoint such deputies and other employees as may be necessary to carry out his duties under T.C.A. sec. 8-810, as approved by the court in the regular and proper manner as provided by law (T.C.A. sec. 8-2001), together with any and all personnel necessary in the proper operation of the consolidated jail, formerly the jail of Davidson County and the jail of the City of Nashville.

(4) The Sheriff is bound by the civil service provisions of the Charter in selecting employees to operate the consolidated workhouse, formerly the city workhouse and the county workhouse, except that the superintendent, warden or head of said consolidated workhouse shall be appointed by the Sheriff to serve at his will for the reasons heretofore set out in this opinion.

(5) The Sheriff, in the conduct of his office, shall be subject to and governed by Sections 16.05 and 8.202 of the Metropolitan Charter.

82

█ (6) All fees, commissions, emoluments, and perquisites of the office of Sheriff shall accrue to the Metropolitan Government as the same formerly accrued to the County of Davidson.

With the modifications hereinabove indicated, the action of the chancellor is affirmed at the costs of appellant, Metropolitan Government of Nashville and Davidson County, Tennessee.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.