# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### September 20, 2005 Session

## WALTER BAILEY, ET AL. v. COUNTY OF SHELBY, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-04-0550-3     D.J. Alissandratos, Chancellor

---

### No. W2005-01508-COA-R3-CV - Filed November 22, 2005

---

This appeal from a declaratory judgment action requires us to determine whether term limits imposed on Shelby County Commissioners by the 1994 amendments to the Shelby County Charter, Article II, section 2.03(G), are permissible under Tennessee Code Annotated § 5-1-210 and, if so, whether § 5-1-210 is unconstitutional under the Tennessee Constitution, Article VII, Section 1. We hold that term limits are permitted as "qualifications" under Tennessee Code Annotated § 5-1-210(4). We further hold that Tennessee Code Annotated § 5-1-210(4), insofar as it permits county charters to prescribe the qualifications of members of the county legislative body, is void as unconstitutional under Article VII, Section 1, of the Tennessee Constitution. We accordingly vacate the judgment of the trial court, award summary judgment to Plaintiffs/Appellants, and enjoin enforcement of section 2.03(G) of the Shelby County Charter.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., joined. W. FRANK CRAWFORD, P.J., W.S., filed a dissenting opinion.

Allan J. Wade, Lori Hackleman Patterson and Brandy S. Parrish, Memphis, Tennessee, for the appellants, Walter Bailey, Julian Bolton and Cleo Kirk.

Leo Bearman, Jr., Jason A. Strain, Memphis, Tennessee, for the appellees, County of Shelby, Shelby County Election Commission, Gregory M. Duckett, Richard L. Holden, Nancye E. Hines, O. C. Pleasant, Jr., and Maura Black Sullivan.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Ann Louise Vix, Senior Counsel, for the Intervenor, State of Tennessee.

**OPINION**

The facts in this case are undisputed and the issues raised are issues of law. Walter Bailey, Julian Bolton, and Cleo Kirk (collectively, "Appellants") are elected members of the Shelby County Board of Commissioners ("the Board of Commissioners"). They also are candidates, as defined by Tennessee Code Annotated 2-10-102(3),[1] for the Board of Commissioners in the election scheduled to be held in August 2006. Under Article II, section 2.03(G) of the Shelby County Charter ("the Charter"), they will be ineligible to be elected to or to hold the office of Commissioner when their current terms expire.

On March 22, 2004, Appellants filed a declaratory judgment action against the County of Shelby, the Shelby County Election Commission, Gregory M. Duckett, Richard L. Holden, Nancye E. Hines, O.C. Pleasant, Jr., and Maura Black Sullivan (collectively, "the County") in the Shelby County Chancery Court. In their complaint, Appellants sought a declaration that Article II, section 2.03(G) of the Charter, which imposes a limit of two consecutive four-year terms on the Shelby County Mayor and Board of Commissioners, is unlawful under Tennessee Code Annotated § 5-1-21-201, *et. seq.*, and void as unconstitutional under Article VII, Section 1, of the Tennessee Constitution. They further sought an injunction enjoining the County from enforcing the Charter provision. The parties stipulated to the facts, filed cross-motions for summary judgment, and stipulated that the summary judgment hearing could be treated as a non-jury trial on the merits.

The trial court determined that, because having served two consecutive four-year terms renders a prospective candidate ineligible for office, term limits relate to the qualifications for holding office. It held, therefore, that the Charter's imposition of term limits is permissible under Tennessee Code Annotated § 5-1-210(4). It also determined that Tennessee Code Annotated § 5-1-210(4) is not invalid under Article VII, Section 1, of the Tennessee Constitution. Accordingly, the trial court denied injunctive relief and awarded summary judgment to the County on June 23, 2005.

Appellants filed a timely notice of appeal to this Court on June 23, 2005. On June 28, 2005, Appellants filed a motion in the Tennessee Supreme Court pursuant to Tennessee Code Annotated

---

[1]Tennessee Code Annotated § 2-10-102(3) provides:

"Candidate" means an individual who has made a formal announcement of candidacy or who is qualified under the law of this state to seek nomination for election or elections to public office, or has received contributions or made expenditures except for incidental expenditures to determine if one shall be a candidate, or has given consent for a campaign committee to receive contributions or make expenditures with a view to bringing about the individual's nomination for election or election to state public office[.]

Tenn. Code Ann. § 2-10-102(3)(2003 & Supp 2004).

§ 16-3-201(d),[2] requesting that the supreme court assume jurisdiction of the appeal on the grounds that it is a case of unusual public importance involving constitutional issues. They further moved the court to grant an expedited appeal in order to assure that the issues would be decided in advance of the February 16, 2006, filing and qualifying deadlines for the next election. The supreme court denied Appellants' motion on July 13, 2005. On July 28, 2005, Appellants filed a motion for an expedited appeal in this Court. The County consented to the motion, and this Court granted Appellants' motion on August 3, 2005.

This Court heard oral argument of the matter on September 20, 2005. We vacate the award of summary judgment to the County and award summary judgment to Appellants. We additionally enjoin the County from enforcing section 2.03(G) of the Charter.

## ISSUES PRESENTED

The issue raised for our review, as presented by Appellants is:

Whether Shelby County Charter, Article II, § 2.03(G), which provides that no County Mayor or County Commissioner is eligible to be elected to or to hold their offices for more than two consecutive four-year terms, is illegal and void because it contravenes Tennessee Constitution, Article VII, Section 1.

## STANDARD OF REVIEW

This issue presented for our review is an issue of law. Our review of a trial court's conclusions on matters of law is *de novo*, with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of the law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

---

[2]Tennessee Code Annotated § 16-3-201(d) provides:

(d)(1) The supreme court may, upon the motion of any party, assume jurisdiction over an undecided case in which a notice of appeal or an application for interlocutory or extraordinary appeal is filed before any intermediate state appellate court after June 22, 1992.

(2) The provisions of subdivision (d)(1) apply only to cases of unusual public importance in which there is a special need for expedited decision and which involve:

(A) State taxes;

(B) The right to hold or retain public office; or

© Issues of constitutional law.

Tenn. Code Ann. § 16-3-201(d)(Supp. 2004).

**ANALYSIS**

The issue raised for our review, as we perceive it, requires a two-part analysis. First, we must determine whether Article II, section 2.03(G) ("section 2.03(G)") of the Charter is permissible under Tennessee Code Annotated § 5-1-210. This determination turns on whether term limits are a constitutionally impermissible restriction of the four-year terms to which constitutional officers are elected, or are an element of qualifications which may be prescribed by the legislature. Second, if term limits relate to the qualification of a candidate, section 2.03(G) does not does not contravene the express provisions of § 5-1-210(4) of the Code, and we must determine whether § 5-1-210(4) violates Article VII, Section 1, of the Tennessee Constitution.

We begin our analysis by noting that, although Appellants rely on various portions of the Charter in support of their argument, the record does not contain a copy of the Shelby County Charter. We further note, however, that the parties do not dispute that Shelby County has a charter form of government, or that in 1994 the Shelby County Charter was amended by referendum of the voters of Shelby County to include section 2.03(G). The parties also do not dispute that section 2.03(G) provides:

> No County Mayor nor any member of the Board of County Commissioners shall be eligible to be elected to or hold the office of County Mayor or County Commissioner for more than two consecutive four-year terms. Provided, however, if an individual is appointed to fill an unfilled term either for Mayor or County Commissioner, this term shall not be counted as part of the two consecutive elected terms.

Accordingly, we take judicial notice that Shelby County utilizes a charter form of government as authorized by Tennessee Code Annotated § 5-1-201, *et. seq.*, pursuant to the Tennessee Constitution, Article VII, Section 1 ("Article VII"); that its Charter became effective on September 1, 1986; and that the Charter was amended in 1994 to include, *inter alia*, section 2.03(G). Because it is a governmental document whose existence is neither in doubt nor disputed and whose contents may be readily known by all, we additionally can and do take judicial notice of the Shelby County Charter in its entirety.[3]

### Validity of section 2.03(G) under the Tennessee Code

Article VII, Section 1, of the Tennessee Constitution as amended in 1978 provides:

> The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County Clerk and an

---

[3]*Brannon v. County of Shelby*, 900 S.W.2d 30, 33 n.6 (Tenn. Ct. App.1994)(taking judicial notice of the Shelby County Charter); *See City of Memphis v. Int'l Bhd. of Elec. Workers Union, Local 1288*, 545 S.W.2d 98, 101 (Tenn. 1976)(taking judicial notice of private acts of the General Assembly authorizing joint city-county agencies in Shelby County).

Assessor of Property. Their qualifications and duties shall be prescribed by the General Assembly. Any officer shall be removed for malfeasance or neglect of duty as prescribed by the General Assembly.

The legislative body shall be composed of representatives from districts in the county as drawn by the county legislative body pursuant to statutes enacted by the General Assembly. Districts shall be reapportioned at least every ten years based upon the most recent federal census. The legislative body shall not exceed twenty-five members, and no more than three representatives shall be elected from a district. Any county organized under the consolidated government provisions of Article XI, Section 9, of this Constitution shall be exempt from having a county executive and a county legislative body as described in this paragraph.

The General Assembly may provide alternate forms of county government including the right to charter and the manner by which a referendum may be called. The new form of government shall replace the existing form if approved by a majority of the voters in the referendum.

No officeholder's current term shall be diminished by the ratification of this article.

Tenn. Const. art. VII, § 1.

Under the Tennessee Constitution, the establishment of a county charter form of government is permissible only insofar as provided by the General Assembly. *County of Shelby v. McWherter*, 936 S.W.2d 923, 934 (Tenn. Ct. App. 1996) *perm. app. denied* (Tenn. Oct. 28, 1996). The General Assembly has provided for the right of counties to charter as an alternative form of government in Tennessee Code Annotated § 5-1-201, *et. seq.* Tennessee Code Annotated § 5-1-210 prescribes the contents of a county charter and provides:

The proposed county charter shall provide:

(1) For the creation of an alternative form of county government vested with any and all powers which counties are, or may hereafter be, authorized or required to exercise under the Constitution and general laws of the state of Tennessee, and any and all powers and duties of such county which are required or authorized by private acts effective on the date of ratification of such charter, as fully and completely as though the powers were specifically enumerated therein;

(2) That such chartered county government shall be a public corporation, with perpetual succession, capable of suing and being sued, and capable of purchasing, receiving and holding property, real and personal, and of selling, leasing or disposing of the same to the extent as other counties;

(3) For a county legislative body, which shall be the legislative body of the county and shall be given all the authority and functions of the legislative body of the county being chartered, with such exceptions and with such additional authority as may be specified elsewhere in this part;

(4) For the size, method of election, qualification for holding office, method of removal, and procedures of the county legislative body with such other provisions with respect to such body as are normally related to the organization, powers and duties of governing bodies in counties;

(5) For the assignment of administrative and executive functions to officers of the county government, which officers may be given, subject to such limitations as may be deemed appropriate or necessary, all or any part of the administrative and executive functions possessed by the county being chartered and such additional powers and duties, not inconsistent with general law or the Constitution of Tennessee;

(6) For the names or titles of the administrative and executive officers of the county government, their qualifications, compensation, method of selection, tenure, removal, replacement and such other provisions with respect to such officers, not inconsistent with general law, as may be deemed necessary or appropriate for the county government;

(7) For such administrative departments, agencies, boards and commissions as may be necessary and appropriate to perform the functions of county government in an efficient and coordinated manner and for this purpose for the alteration or abolition of existing county offices, departments, boards, commissions, agencies and functions, except where otherwise provided in this part or prohibited by the Constitution of Tennessee;

(8) For the maintenance and administration of an effective civil service system and of county employees' retirement and pension systems and the regulation of such systems; provided, that nothing in this part or in a charter adopted pursuant to this part shall impair or diminish the rights and privileges of the existing employees under civil service or in the existing county employees' retirement and pension systems. Nothing in this subdivision shall be construed to require any county to establish a civil service system or to establish and maintain its own retirement and pension system in the adoption of a charter form of county government;

(9) For the method and procedure by which such charter may subsequently be amended; provided, that no such amendment shall be effective until submitted to the qualified voters of the county and approved by a majority of those voters voting thereon;

(10) For such procedures, methods and steps as are determined to be necessary or appropriate to effectuate a transition from the existing county government to the chartered form of county government;

(11) Such terms and provisions as are contained in any private act with respect to any county owned utility supported by its own revenues and operated, administered and managed pursuant to such private act; provided, that such terms and provisions of the charter may subsequently be amended pursuant to subdivision (9); and

(12) That the duties of the constitutional county officers as prescribed by the general assembly shall not be diminished under a county charter form of government; provided, that such officers may be given additional duties under such charters.

Tenn. Code Ann. § 5-1-210(1998).

The Tennessee Code mandates that a county charter must provide for a legislative branch. Tenn. Code Ann. § 5-1-210(3). Section 2.03(A) of the Charter provides that the Board of County Commissioners shall be the legislative branch of Shelby County. The Code also provides that a county charter shall provide for the "qualification for holding office . . . of the county legislative body . . . [.]" Tenn. Code Ann. § 5-1-210(4). The trial court determined that the imposition of term limits is within the purview of "qualification" and that, accordingly, section 2.03(G) of the Charter did not violate or expand upon the express authority granted by the Code.

Appellants submit that the Code does not authorize the imposition of term limits. At oral argument, Appellants particularly emphasized their position that term limits are not a "qualification" as anticipated by the §5-1-210(4), but rather are an inherent part of the "terms" of constitutional officers prescribed by Article VII. They further submit that Article VII expressly rejects limitations on the number of terms a constitutional officer may serve. Appellants contend that, because Article VII provides that county legislative bodies shall be elected for "terms of four years," any limitation on the number of consecutive terms is constitutionally invalid. We disagree.

Article VII mandates that the enumerated constitutional officers shall be elected by the qualified voters of each county, and that they shall be elected to four-year terms. Contrary to Appellants' argument, the plural "terms" does not mandate that each officer shall be entitled to be elected to more than one term. Rather, the duration of each term to which each officer is elected shall be four years. A limitation on the number of terms an officer may serve consecutively does not alter the duration of the term for which s/he is elected.

A term is "[a] fixed and definite period of time[.]" Black's Law Dictionary 1470 (6th ed. 1990). A term of office is "the period during which elected officer or appointee is entitled to hold office, perform its functions, and enjoy its privileges and emoluments." *Id.* at 1471. Once elected, a constitutional officer is entitled to serve one term of four years and may be removed only "for malfeasance or neglect of duty as prescribed by the General Assembly." Tenn. Const. art. VII, § 1.

A qualification, on the other hand, is [t]he possession by an individual of the qualities, properties, or circumstances, natural or adventitious, which are inherently or legally necessary to render him eligible to fill an office or to perform a public duty or function." Black's Law Dictionary 1241 (6th ed. 1990). Section 2.03(G) of the Charter provides that a person shall not be eligible to stand for election or to hold the office of County Mayor or County Commissioner for more than two consecutive four-year terms. Thus, an individual who has been elected to two consecutive four-year

terms possess an adventitious quality or circumstance which renders him/her ineligible to stand for a third consecutive term.

We agree with the trial court that term limits fall squarely within "qualification" as used in § 5-1-210(4) of the Code. Under section 2.03(G), a mayor or member of the Board of Commissioners who has served two consecutive four-year terms is ineligible, or disqualified, from holding office for an additional consecutive term. Whether s/he will be entitled to serve even a second consecutive four-year term is determined by the will of the people; there is no entitlement to additional terms.

Tennessee Code Annotated § 5-1-210(4) expressly stipulates that the charter of a county operating under a charter form of government shall prescribe the qualifications for holding office in the legislative body. Although § 5-1-210 does not expressly authorize that charters may alter the qualifications prescribed by the General Assembly for traditional Article VII forms of government, such authority is implied by a plain reading and liberal construction of the provision. *See Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710-713 (Tenn. 2001)(holding: the General Assembly's grant to a local authority of comprehensive governmental power that neither enumerates the powers nor expressly limits the scope of authority, such as the comprehensive grant of power seen in the charter provisions contained in Tennessee Code Annotated § 5-1-201, *et. seq.*, will be liberally construed.) Accordingly, section 2.03(G) of the Charter does not violate Tennessee Code Annotated § 5-1-210.

## CONSTITUTIONALITY OF TENNESSEE CODE ANNOTATED § 5-1-210(4)

We next turn to whether term limits as prescribed by section 2.03(G) and authorized by the express provisions of Tennessee Code Annotated § 5-1-210(4) are constitutionally invalid. Appellants contend that section 2.03(G) violates Article VII for two reasons. First, they contend that the members of the Board of Commissioners are constitutional officers and that because term limits are an element of "terms" as utilized in the first sentence of Article VII, Article VII provides a blanket prohibition on term limits. Accordingly, they assert that even the General Assembly may not impose term limits on constitutional officers. Second, Appellants contend that, assuming term limits fall within the purview of "qualification" and are not constitutionally invalid *per se*, under the first paragraph of Article VII, only the General Assembly may prescribe the qualifications of constitutional officers. They contend, therefore, that § 5-1-210(4) unconstitutionally delegates the authority to prescribe the qualifications of constitutionally mandated officers.

The County, on the other hand, asserts that the Charter may limit the terms of the County Commissioners because the Commissioners are not the constitutional officers enumerated in the first paragraph of Article VII. The County argues that, because the third paragraph of Article VII provides for the creation of alternate forms of county government, county governments operating under such alternate forms are not bound by the provisions and limitations of the preceding portions of Article VII. The County submits that under the broad authority given to the General

Assembly to provide for alternate forms of county government, the General Assembly may delegate the power to prescribe the qualifications for member of the county legislative body to the alternate county governments.

The County's argument, in summation, is that paragraph three of Article VII is a stand-alone provision. The County accordingly asserts that the preceding paragraphs of Article VII are inapplicable where a county government operates under an "alternate form" of government pursuant to a statute of the General Assembly. The County alternatively submits that, even if the members of the Shelby County Board of Commissioners are constitutional officers under Article VII, section 2.03(G) of the Charter is not invalid because it does not reduce the term of any constitutional officer.

As noted above, we reject Appellants' assertion that term limits are antithetical to the constitutional mandate that constitutional officers must be elected to four-year terms, or that this mandate requires eligibility to an unlimited number of terms. The imposition of term limits renders some otherwise qualified candidates ineligible, or unqualified.

Appellants also devote considerable attention to the Journal of the Debates of the Constitutional Convention of 1977 and to opinions of the Attorney General in support of their contention that, under Article VII, term limits, however categorized, are unconstitutional *per se*. However, whether Article VII provides a blanket prohibition against term limits, including term limits which might be imposed by the General Assembly acting within its constitutional authority to prescribe the qualifications of constitutional officers, is not properly before this Court.

It is well settled that "a justiciable controversy . . . between persons with adverse interests" must exist to maintain a declaratory judgment action. *Parks v. Alexander*, 608 S.W.2d 881, 891-92 (Tenn. Ct. App. 1980) *perm. app. denied* (Tenn. Dec. 1, 1980). No justiciable controversy exists where only a theoretical question is raised or where the existence of a controversy depends upon future, hypothetical facts. *Id.* at 892. The courts have no jurisdiction to render advisory opinions based on events which may occur in the future. *Id.* Thus, whether the General Assembly may impose term limits on constitutional officers is not an issue properly before this Court in this case.

In light of our holding that term limits are an element of qualifications, two questions remain. First, whether paragraph three of Article VII can be construed as a stand-alone paragraph, such that the provisions of the preceding paragraphs are inapplicable to alternate forms of county government. Second, if paragraph three is not a stand-alone provision and if alternate forms of county government must include the officers enumerated in the first paragraph of Article VII, whether Tennessee Code Annotated § 5-1-210(4) impermissibly delegates authority to the Charter to prescribe the qualifications of the Shelby County Commissioners.

We accordingly turn to whether the members of the Shelby County Board of Commissioners are constitutional officers under Article VII, Section 1, of the Tennessee

Constitution. The County relies on *Leech v. Wayne County*, 588 S.W.2d 270 (Tenn. 1979), and *Tennessee ex rel. Maner v. Leech*, 588 S.W.2d 534 (Tenn. 1979), for the proposition that the members of legislative bodies in counties operating under an alternate form of government are not the constitutional officers discussed in paragraph one of Article VII, officers whose qualifications shall be prescribed by the General Assembly. We agree with the County's argument that *Leech v. Wayne County* and *Maner v. Leech* affirm that various forms of county government are constitutionally permitted under Article VII. The Supreme Court has noted:

> It is evident that, in broad form, our Constitution now provides for three types of county government:
>
> a. Article VII government wherein the basic units of government are the county executive and the county legislative body.
> b. A consolidated form of government commonly known as Metropolitan or "Metro." See Article XI, Section 9, last paragraph. Any county having such a government is exempt from Article VII government.
> c. An alternate form of government either chartered or unchartered created by the General Assembly. Under this proviso the legislature is specifically authorized to create diverse forms of county government without regard to the general type established in Article VII.
>
> When the legislature authorizes any deviation from Article VII government its action must be ratified by the people in a referendum called for that purpose.

*Tennessee ex rel. Maner v. Leech*, 588 S.W.2d at 537 (footnote omitted). We disagree with the County, however, that *Maner v. Leech* stands for the proposition the members of the Board of Commissioners are not members of the legislative body discussed in Article VII, paragraph one, and that paragraph three must be read as a stand-alone provision. To so conclude would be tantamount to concluding the alternate forms of county government envisioned by paragraph three, forms which are neither defined nor limited in number, may eliminate the constitutional officers mandated by paragraph one of Article VII.[4]

That at least three forms of government are constitutionally permitted does not necessitate a conclusion that some of the forms may dispense with the constitutional officers mandated in the first sentence of Article VII. The third paragraph of Article VII, as amended in 1978, grants the General Assembly "very broad powers and discretion with respect to the *structure* of local

---

[4]The County asserts that the Charter could not eliminate the Board of Commissioners because Tennessee Code Annotated § 5-1-210(3) expressly mandates that a county charter shall provide for a county legislative body. This is true. However, we note that § 5-1-210 does not likewise provide for the other constitutional officers listed in Article VII. If, as the County asserts, paragraph three of Article VII is a stand-alone provision and alternate forms of county governments are not constitutionally required to include the officers listed in paragraph one, then, under the County's logic, charter county governments could dispense with, for example, the office of Sheriff, which is not expressly provided for in § 5-1-210. We find such a result untenable.

governments[.]" *Leech v. Wayne County*, 588 S.W.2d at 272 (emphasis added). Accordingly, "the constitution does not mandate a uniform *structure* of county governments across the state. It specifically authorizes legislation creating different forms of local *organization*." *Id.*(emphasis added).

Form, moreover, is the "[a]ntithesis of 'substance.'" Black's Law Dictionary 651 (6th ed. 1990). Form relates to the "legal or technical manner or order to be observed." *Id.* Although the third paragraph of Article VII grants the General Assembly broad authority to provide for alternate forms or structures of county government, it does not eradicate the substantive requirements provided in the preceding portions of Article VII. The assertion that alternate forms of county government anticipates that these governmental structures may not include the constitutional officers named in the first sentence of the article is not supported by the language of Article VII or the case law.

The plain language of Article VII provides for at least three distinct county governmental structures. As the supreme court observed in *Maner v. Leech* and *Leech v. Wayne County*, Article VII provides for: traditional Article VII county governments; Article XI, Section 9, consolidated governments; and Article VII "alternate forms" of government, including charter governments. An examination of Article VII's treatment of the second form of government, which is distinctly and separately provided for in Article XI, Section 9, of the Tennessee Constitution, illustrates that, unless expressly excepted, each of the three forms of government must substantively include the constitutional officers designated in paragraph one.

The second paragraph of Article VII expressly exempts counties operating under an Article XI, Section 9 home-rule consolidated form of government from having a county executive and county legislative body, two of the constitutional officers mandated in paragraph one. This express exemption necessarily implies that, unless otherwise provided in Article XI, the remaining constitutional officers must be included in an Article XI, home-rule form of county government. Any contrary construction would render the express exemption superfluous. The third paragraph of Article VII, however, contains no like exemption for counties operating under an alternate or charter form of government.

The proposition that county governments operating under a form of government other than the traditional form may eliminate the constitutional officers also is unsupported by the case law. In *Metropolitan Government of Nashville and Davidson County v. Poe*, 383 S.W.2d 265 (Tenn. 1964), the Tennessee Supreme Court considered this proposition in the context of the consolidated government of Nashville and Davidson County, which operates as a consolidated home-rule government under a metropolitan charter pursuant to Article XI, Section 9 of the Tennessee Constitution. In that case, the court upheld a charter provision transferring some duties of the county sheriff to the Nashville chief of police. *Metro. Gov't of Nashville and Davidson County,* 383 S.W.2d at 273. In so holding, the court noted that although the office of sheriff is a constitutional one, the duties of the sheriff are prescribed by the General Assembly by statute. *Id.* The court opined that, in light of the purpose of the consolidated form of government

to "eliminate duplication and overlapping of duties and services by which economic savings to taxpayers will be realized," there was no "constitutional infirmity against" transferring a duty from the sheriff to the chief of police. *Id.* at 276-77.

The supreme court expressly rejected, however, the proposition that a charter government organized pursuant to Article XI, Section 9, could eliminate the constitutional office of sheriff. The court stated:

> Article 7, Section 1 of the Constitution of Tennessee provides that 'There shall be elected in each County, by the qualified voters therein, one Sheriff, one Trustee, one Register;' etc. In the Constitution of 1796, Article 6, Section 1, it was provided that 'There shall be appointed in each county, by the county Court, one sheriff, one coroner, one trustee', etc.
>
> In the Constitution of 1834, by Article VII, Section 1, it was provided that 'There shall be elected in each County, by the qualified voters therein, one Sheriff, one Trustee, one Register', etc.
>
> It is obvious that express provisions have been made in all three Constitutions adopted by the voters of Tennessee for the office of Sheriff, and any language that may have been employed in any prior decisions of this Court, and particularly in Robinson v. Briley, supra, [374 S.W.2d 382 (Tenn. 1963)] from which it might be remotely concluded that we held the office of Sheriff or any other constitutional office could be or was abolished by the Charter was a mere inadvertence and not meant to be a holding of this Court.
>
> The only method by which the Constitution may be amended is set out in Article 11, Section 3 of the Constitution itself.

*Id.* at 268.

*Metropolitan Government of Nashville and Davidson County* concerned the charter of a county operating under the second type of county government, the type recognized in paragraph two of Article VII, Section 1 and organized pursuant to Article XI, Section 9. However, the reasoning of the supreme court in that case is equally applicable here. Although it permits alternate forms of county governments other than and in addition to the traditional form and that formed pursuant to Article XI, Section 9, Article VII continues to expressly provide for certain constitutional officers. The pertinent part of Article VII currently provides: "The qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County Clerk and an Assessor of Property." Tenn. Const. art. VII, § 1. There is nothing in the case law to support the contention that an alternate structure of county government could eliminate the constitutional officers substantively required by Article VII, Section 1 of the Tennessee Constitution.

We also observe that Tennessee Code Annotated § 5-1-210(12) implicitly recognizes that paragraph three of Article VII is not a stand-alone provision, and that the constitutional officers named in paragraph one of Article VII may not be eliminated from county government. When the language of a statute is clear, we must utilize the plain, accepted meaning of the words used by the legislature to ascertain the statute's purpose and application. If the wording is ambiguous, we must look to the entire statutory scheme and at the legislative history to ascertain the Legislature's intent and purpose. We must construe statutes in their entirety, neither constricting nor expanding the legislature's intent. In so doing, we assume that the legislature chose the words of the statute purposely, and that the words chosen "convey some intent and have a meaning and a purpose" when considered within the context of the entire statute. *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004)(citations omitted).

Section 5-1-210(12) of the Tennessee Code mandates that a county charter must provide "[t]hat the duties of the constitutional county officers as prescribed by the general assembly shall not be diminished under a county charter form of government; provided, that such officers may be given additional duties under such charters." Tenn. Code Ann. § 5-1-210(12)(1998). A plain reading of this subsection compels a conclusion that county governments must include the *constitutional* officers whose statutorily defined duties may not be diminished by the charter. These constitutional officers are those prescribed by Article VII.

Finally, although we are neither persuaded by nor rely on it for our determination here, we note that Shelby County itself has recognized that its charter form of government represents a structural organization, and that its elected county officers include constitutional officers. The Introduction to the Charter states:

> The Charter contains a strong prohibitionary section which, among other things, prevents its use in any way to . . . diminish the duties of the elected *constitutional* officers of Shelby County. (Emphasis added.)
>
> . . . .
>
> It is appropriate that, after over 180 years of existence, the County replace the present *structure* of County Government, as it has evolved, with a totally responsive, responsible and modern *structure*. (Emphasis added.)

Additionally, section 2.02 of the Charter provides: "The Legislative Branch is vested with all other powers of the county not specifically, or by necessary implication, vested in some other official of the County by the Constitution or by statute not inconsistent with this Charter." Section 6.04, furthermore, provides: "The duties of the *constitutional* County officers as prescribed by the general assembly shall not be diminished under this Charter[.] (Emphasis added.)

There is nothing in the language of paragraph three of Article VII to indicate that it should be read as a stand-alone paragraph such that the provisions of the preceding paragraphs are inapplicable to alternate forms of government. Article VII contains neither an express nor implied provision that alternate forms of county government, forms which, unlike Article XI, Section 9 consolidated home-rule governments, are entirely undefined, are exempt from having the constitutional county officers which have been prescribed by every Tennessee Constitution since 1796. Although the courts have not previously addressed whether the third type of county government, Article VII alternate-form government, must include the officers constitutionally mandated for traditional Article VII/type one and Article XI/type two forms of county government, that it may not is unsupported by a plain reading of Article VII and the reasoning of the supreme court in *Metropolitan Government of Nashville and Davidson County*. In the absence of an express exemption like that provided in paragraph two of Article VII for Article XI, Section 9 consolidated governments, this Court is loathe to disturb a historical Tennessee constitutional mandate.

Having concluded that alternate forms of county government must include the constitutional officers named in Article VII, we next turn to whether Tennessee Code Annotated § 5-1-210(4) unconstitutionally delegates the authority to prescribe the qualifications of constitutional officers. Appellants assert that it does. The County, on the other hand, relies on *Southern Constructors, Inc. v. Loudon County Board of Education*, 58 S.W.3d 706 (Tenn. 2001), for the proposition that it does not. The County also asserts that, because paragraph three of Article VII is a stand-alone provision which does not vest the authority to prescribe the qualifications of elected officials of alternate forms of government in any particular entity, the General Assembly may delegate this authority to the alternate government.

As discussed above, we reject the County's argument that paragraph three of Article VII is a stand-alone paragraph. Accordingly, we reject the County's argument that, because paragraph three does not expressly state who shall prescribe the qualifications of the county officers in an alternate form of government, the General Assembly may delegate this authority to the Charter. We also reject the County's assertion that, assuming alternate forms of county government must include the officers named in paragraph one of Article VII, section 2.03(G) of the Charter is not unconstitutional because it does not diminish the duties of any constitutional officer. This assertion is irrelevant to whether the General Assembly constitutionally may delegate its Article VII authority to prescribe the qualifications of members of county legislative bodies.

We begin our analysis by noting that when considering the constitutionality of a statute, we start with the presumption that acts by the General Assembly are constitutional. *Osborn v. Marr*, 127 S.W.3d 737, 741 (Tenn. 2004). As the County asserts, and as we have noted above, *Southern Constructors* recognized that a general provision granting "comprehensive governmental power to the local authority without either enumerating the powers or expressly limiting the scope of authority . . . [will] be *liberally* construed." *Southern Constructors*, 58 S.W.3d at 713(citations omitted; emphasis in the original). As the *Southern Constructors* court

further noted, Article VII, Section 1 and Tennessee Code Annotated §§ 5-1-201 to 5-1-214 are examples of a comprehensive grant of power. Thus, counties operating under a charter form of government are not "strictly limited to those powers otherwise granted by the General Assembly, and they possess broad authority for the regulation of their own local affairs." *Id.* We do not find this particularly helpful, however, where in § 5-1-210(4) the General Assembly has *expressly* granted the authority to prescribe the qualifications of the members of the county legislative bodies to the local government. No liberal construction of the comprehensive grant contained in § 5-1-201, *et. seq.*, is necessary.

Additionally, although paragraph three of Article VII vests broad authority in the General Assembly to structure county governments, we do not believe the supreme court's reasoning in *Southern Constructors* stands for the proposition the General Assembly may delegate its authority to prescribe the qualifications of the constitutional county officers. In *Southern Constructors*, the supreme court addressed whether a county school board had the authority to arbitrate a dispute with a contractor. The *Southern Constructors* court engaged in a lengthy analysis of the Dillon Rule, a judicially created rule of statutory construction under which courts construe statutes granting authority to local governments strictly and narrowly. *Id.* at 710. The court "retain[ed] Dillon's Rule, subject to its exceptions, as a rule of construction to determine the scope of local governmental authority." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 714 (Tenn. 2001). As noted above, the court recognized an exception where the General Assembly grants comprehensive power, such as that granted by Tennessee Code Annotated §§ 5-1-201 to 5-1-214, to a local authority. *Id.* at 713. Finding no "expressed intention by the General Assembly to confer general powers upon county boards of education or to have the expressed powers broadly construed," the court applied the Dillon Rule in *Southern Constructors*. *Id.* at 715. Nevertheless, the court concluded that the power of the school board to arbitrate its dispute with Southern Constructors was fairly implied by the express powers to contract provided by Tennessee Code Annotated § 49-2-203. *Id.* at 716.

In examining the circumstances under which Dillon's Rule may not apply, the *Southern Constructors* court addressed the authority of the General Assembly to delegate its powers to other entities. The court noted that the General Assembly may delegate its authority under two circumstances: "when the Constitution itself authorizes the delegation and when the delegation is 'sanctioned by immemorial usage originating anterior to the Constitution and continuing unquestioned thereunder.'" *Id.* at 712 n.3 (quoting *Kee v. Parks*, 283 S.W. 751, 753 (1926)(quoting *Wright v. Cunningham*, 91 S.W. 293, 297-98)). In the case now before us, there can be no argument that the General Assembly's delegation of authority to charter county governments found in Tennessee Code Annotated 5-1-210(4) is sanctioned by "immemorial usage." Thus, we turn to whether the constitution itself authorizes the General Assembly to delegate its authority to prescribe the qualifications of the constitutional officers to the Charter.

Article VII provides, "[t]heir qualifications and duties *shall* be prescribed by the General Assembly." Tenn. Const. art. VII, § 1 (emphasis added). The General Assembly has prescribed the qualifications for the members of county legislative bodies in Tennessee Code Annotated § 5-

5-102. When used in the constitution, the word "shall" generally is construed as being mandatory rather than directive. *West Tenn. Motor Exp., Inc. v. Tennessee Pub. Serv. Comm'n*, 514 S.W.2d 742, 746 (Tenn. 1974). In order to be valid, legislation must comply with mandatory provisions of the constitution. *State v. Hailey*, 505 S.W.2d 712, 714 (Tenn. 1974). We find nothing in the language of Article VII that would support the proposition that the General Assembly's duty to prescribe the qualifications of constitutional officers is directive or permissive and not mandatory, or that the General Assembly may delegate this authority.

The supreme court's analysis of the General Assembly's authority to delegate its Tennessee Constitution Article II , Section 3 legislative authority is applicable here. The supreme court has opined that, although the General Assembly may delegate to an administrative agency the power to implement the policies expressed by a particular statute, it may not delegate authority that is "purely legislative." *Gallaher v. Elam*, 104 S.W.3d 455, 464 (Tenn. 2003)(citations omitted). In delegating the power to implement law, moreover, the General Assembly must do so in a statute that "contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent." *Id.* (quoting *Bean v. McWherter*, 953 S.W.2d 197, 199 (Tenn. 1997)). Thus, the General Assembly may not delegate its Article II constitutional authority to make law, but only the sufficiently defined power to facilitate implementation of the law as intended. The Attorney General of Tennessee, moreover, also has opined that the General Assembly may not delegate its duty to prescribe the qualifications of constitutional officers. Tenn. Op. Atty. Gen. No. 02-037, 2002 WL 531163 (Tenn.A.G.). There is simply no support in either the Tennessee Constitution or the case law for the proposition that the General Assembly may delegate its Article VII authority to prescribe the qualifications of members of a county legislative body.

Insofar as it permits the qualifications of the constitutional officers to be prescribed by a county charter, Tennessee Code Annotated § 5-1-210(4) is unconstitutional. In accordance with Tennessee Code Annotated § 1-3-110,[5] we may elide unconstitutional portions of a statute and leave the remainder intact where we conclude that the General Assembly would have enacted the statute with the unconstitutional provision omitted. *In re Swanson*, 2 S.W.3d 180, 189 (Tenn.

---

[5]Tennessee Code Annotated § 1-3-110 provides:

It is hereby declared that the sections, clauses, sentences and parts of the Tennessee Code are severable, are not matters of mutual essential inducement, and any of them shall be exscinded if the code would otherwise be unconstitutional or ineffective. If any one (1) or more sections, clauses, sentences or parts shall for any reason be questioned in any court, and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, and the inapplicability or invalidity of any section, clause, sentence or part in any one (1) or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance.

Tenn. Code Ann. § 1-3-110 (2003).

1999).  Accordingly, we elide the phrase "qualifications for holding office" from Tennessee Code Annotated 5-1-210(4).

**CONCLUSION**

The power to alter or amend the Constitution of Tennessee belongs not to the General Assembly, but to the people.  *Illustration Design Group, Inc. v. McCanless*, 454 S.W.2d 115, 118 (Tenn. 1970).  The judicial branch of government, moreover, has a duty to determine the substantive constitutionality of statutes, ordinances, and like measures.  *City of Memphis v. Shelby County Election Com'n*, 146 S.W.3d 531, 536 (Tenn. 2004).  In so doing, it may not amend the constitution.  The Tennessee Constitution may be amended only as provided in Article XI, Section 3 of the constitution itself.  "A change effected in any other way is revolutionary, and lies wholly outside the domain of law." *Derryberry v. State Bd. of Election Commissioners*, 266 S.W. 102, 105 (Tenn. 1924)(citations omitted).

Article VII, Section 1 of the Tennessee Constitution stipulates that "[t]he qualified voters of each county shall elect for terms of four years a legislative body, a county executive, a Sheriff, a Trustee, a Register, a County Clerk and an Assessor of Property."  Although in 1978 the people of Tennessee amended the constitution and authorized the General Assembly to provide for alternate forms of county government, the people did not authorize the substantive elimination of the traditional constitutional officers from county government.  Paragraph three of Article VII, Section 1, as amended, therefore, cannot be read as a stand-alone provision in the absence of language which excepts it from the remainder of the section.  In the absence of language which excerpts it from the remainder of the Article, to construe paragraph three of Article VII, Section 1 as a stand-alone provision is inconsistent with the wording of the Article in its entirety.  Thus, the members of Shelby County's legislative body, the Shelby County Board of Commissioners, like the Sheriff and the other Article VII officers, are constitutional officers.

The dissent asserts that this conclusion is "somewhat ludicrous" because it "say[s] that the County can have a new form of government but it is controlled by the old form of government that the new form replaces."  We respectfully disagree with the dissent that our holding compels such a reading of Article VII, Section 1.  As noted above, paragraph three permits the General Assembly to provide for an unlimited number of "forms" of county government upon approval by a majority of the voters in a referendum, and it permits the General Assembly to provide for the manner by which such a referendum may be called.  There is noting in the wording of paragraph three, however, that indicates that this new "form" may be so distinct as to eliminate the constitutional officers specifically mandated by paragraph one, and there is nothing in the language of paragraph one to indicate that paragraph one does not apply to the remainder of Section 1.  That the constitution requires the inclusion of a legislative body, a county executive, a sheriff, a trustee, a register, a county clerk, and an assessor of property does not stand for the proposition that an alternate form of government is "controlled" by the old form. It simply requires that the new form include a legislative body of some type and six specific officers.  We cannot agree with the dissent that this requirement "controls" the form that an

alternate government might take. Indeed, the duties and qualifications of these officers within the alternate form, and the remainder of the officers and employees, structure, operation, and method of amendment of an alternate form are entirely uncontrolled by the very limited mandate of paragraph one.

As the dissent agrees, the imposition of term limits by the Shelby County Charter falls within the penumbra of "qualifications" as utilized in Article VII, Section 1 of the Tennessee Constitution and Tennessee Code Annotated § 5-1-210(4). Without opining on whether the General Assembly may impose term limits on members of the Shelby County Board of Commissioners, we hold that Tennessee Code Annotated § 5-1-210(4) expressly but unconstitutionally delegates the General Assembly's Article VII, Section 1 authority to prescribe the qualifications of members of the county legislative body to counties operating under a charter form of government. We accordingly elide the phrase "qualifications for holding office" from Tennessee Code Annotated 5-1-210(4).

## HOLDING

In light of the foregoing, the judgment of the trial court awarding summary judgment to Shelby County is vacated. We award summary judgment to Plaintiffs/Appellants. Accordingly, Shelby County is enjoined from enforcing section 2.03(G) of the Shelby County Charter. Costs of this Appeal are taxed to the Appellees, County of Shelby, Shelby County Election Commission, Gregory M. Duckett, Richard L. Holden, Nancye E. Hines, O.C. Pleasant, Jr., and Maura Black Sullivan.

_____
DAVID R. FARMER, JUDGE

-18-